Filed 8/25/20 (unmodified opinion attached)

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| GOLDEN DOOR PROPERTIES, LLC, et al.,<br><br>      Petitioners,<br><br>      v.<br><br>THE SUPERIOR COURT OF SAN DIEGO COUNTY,<br><br>      Respondent;<br><br><br>COUNTY OF SAN DIEGO et al.,<br><br>      Real Parties in Interest. | D076605, D076924, D076993<br><br>(Super. Ct. Nos. 37-2018-00030460, 37-2018-00054312-CU-TT-CTL, 37-2018-00054559-CU-TT-CTL)<br><br><br>ORDER MODIFYING OPINION; DENYING PETITIONS FOR REHEARING; AND GRANTING REQUESTS FOR JUDICIAL NOTICE<br><br>NO CHANGE IN JUDGMENT |

THE COURT:

It is ordered that the opinion filed herein on July 30, 2020 be modified as follows:

1. On page 5, last line, delete "Newland Real Estate Group, LLC" and replace it with "Newland Sierra LLC".

2. On page 13, in existing footnote 10, insert the following after the first sentence:

The County contends it ultimately "certified a CEQA administrative record . . . comprised of more than 223,000 pages containing over 6,000 emails and attachments."

3. On page 14, insert a new footnote after the last word of the last paragraph as follows. This will require renumbering of all subsequent footnotes:

The County contends that LL&G and Dudek produced to the County all e-mails between themselves and the County, and that the County ultimately included them in the administrative record. To the extent Plaintiffs dispute this assertion, it is an issue for the trial court to resolve on remand.

4. On page 26, in footnote 17, insert the following at the beginning of the footnote:

In a rehearing petition, the County insists that it has never claimed it may destroy e-mails described in section 21167.6. However, by asserting that section 21167.6 "does not mandate document retention" and that Government Code section 26205.1 allows it to destroy records "not expressly required by law to be . . . preserved"—this is precisely the County's position.

5. On page 44, delete the existing footnote 25 and replace it with the following footnote 25:

Although Golden Door's writ petitions cite section 26202, for the first time in the reply brief Plaintiffs develop a different and extensive argument that Government Code section 26202, when considered with Government Code sections 26205 and 26205.1, requires the County to retain records for a two-year minimum. However, because Plaintiffs' three writ petitions omit this argument and, in fact, none cites section 26205, we decline to consider the point.

2

6. On page 49, insert a new footnote at the end of the first full paragraph as follows, which will require renumbering of subsequent footnotes:

> In a rehearing petition, the County contends that some of these documents were already in the record or pertained to other projects. However, Golden Door points out that one such document was in the record only because "Golden Door attached the salvaged email to its own comment letters after obtaining a copy from Fish and Wildlife." Moreover, the "other project" is a related one for a proposed freeway interchange at Interstate 15/Deer Springs Road. Golden Door's property is located in a valley containing the Deer Springs Valley, west of Interstate15. This freeway interchange project is also the subject of Golden Door's PRA requests. In any event, even the County concedes in its rehearing petition that the e-mail containing the U.S. Fish and Wildlife Service's views was not included in the County's production.
>
> In its rehearing petition, Newland makes similar contentions, asserting that each of the Fish and Wildlife and U.S. Fish and Wildlife Service e-mails that Golden Door offered as evidence of destroyed e-mails "are the kind of e-mails that this Court has said do not require retention." (Italics omitted.) These arguments are more appropriately directed to the trial court on remand when it reconsiders the merits of the motions to compel. The important point here is that Golden Door's claim that the County destroyed e-mails that are required to be retained under section 21167.6 is not a "bald assertion" nor is it "unsupported by *any* credible evidence."

7. On page 56, in the second full paragraph, after the sentence ending with "this issue is forfeited", insert the following citation:

> (Cal. Rules of Court, rule 8.204(a)(1)(B); 8.485(a).)

8.  On page 62, delete the last full paragraph that begins with "On this record" and replace it with the following:

> On this record, the referee correctly determined that the common interest doctrine applied to avoid waiver of the attorney-client and attorney work product privileges with respect to communications between the County and Newland involving their joint-defense of the two pre-approval lawsuits.  The Vallecitos case and Records Action each sought to defeat, or at least mortally wound the Project, preapproval.  For example, in the Vallecitos case, Golden Door sought an injunction mandating that the County "cease its action in processing the proposed Newland Project, including its EIR and application for a subdivision map" until a lawful revised water supply assessment demonstrated "sufficient water supply" for the Project.  Moreover, the complaint in Vallecitos alleges that the water supply assessment had a "fatal flaw" and that processing Newland's EIR based on that analysis would invalidate the EIR's consideration of alternatives and mitigation.  The Records Action also sought to end the Project.  Golden Door sought an injunction prohibiting the County from "[p]rocessing . . . the Newland Sierra project EIR until the County has demonstrated compliance with . . . all applicable laws."

9.  On page 63, in the second full paragraph, delete the fourth sentence that states, "That defense would necessarily entail defending the Project" and replace it with:

> That defense would necessarily entail defending aspects of the Project that were at issue in the *Vallecitos* case and the Records Action.

10.  Also on page 63, in the second full paragraph, after the word "communications" immediately before the beginning of section F, insert a new footnote as follows, which will require renumbering of all subsequent footnotes:

4

A common interest, limited to defending these two preapproval lawsuits, may keep the attorney-client and/or work product privileges intact; however, such common interest does not otherwise alter the County's duties as lead agency under CEQA.

11. On page 75, in the first full paragraph, delete the second sentence that begins "Rather than ruling…" and replace that sentence with the following:

The referee and trial court did not rule on each individual request for production. Nor did they adjudicate, on a document-by-document basis, each claim of attorney-client privilege, attorney work product protection, and application of the common interest doctrine. Rather, the referee and superior court issued broad rulings on legal principles involved, and on that basis denied the motions.

The petition for rehearing filed by Petitioners Golden Door Properties, LLC et al. is denied.

The petition for rehearing filed by the County of San Diego, and joined in by Newland Sierra LLC and by Dudek is denied.

The petition for rehearing filed by Newland Sierra LLC and joined in by Dudek is denied.

Petitioners' request for judicial notice of an order issued by the superior court on August 10, 2020 in *Golden Door Properties, LLC v. County of San Diego, et al.* (Super. Ct. San Diego County, 2019, No. 37-2019-00026459-CU-UM-CTL) is granted. (Evid. Code, § 452, subd. (d)(1).)

5

The County of San Diego's request for judicial notice of an order vacating the above-referenced superior court order is granted. (Evid. Code, § 452, subd. (d)(1).)

There is no change in the judgment.

McCONNELL, P. J.

Copies to: All parties

Filed 7/30/20 (unmodified opinion)
CERTIFIED FOR PUBLICATION


COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| GOLDEN DOOR PROPERTIES, LLC, et al.,<br><br>      Petitioners,<br><br>      v.<br><br>THE SUPERIOR COURT OF SAN DIEGO COUNTY,<br><br>      Respondent;<br><br><br>COUNTY OF SAN DIEGO et al.,<br><br>      Real Parties in Interest. | D076605, D076924, D076993<br><br><br>(Super. Ct. Nos. 37-2018-00030460-CU-TT-CTL, 37-2018-00054312-CU-TT-CTL, 37-2018-00054559-CU-TT-CTL) |


ORIGINAL PROCEEDINGS in mandate. Gregory W. Pollack, Judge.

Petition granted in part. Requests for judicial notice granted in part and denied in part.


Latham & Watkins, Christopher W. Garrett, Daniel Brunton and Emily Haws for

Petitioners Golden Door Properties LLC, California Native Plant Society, Hidden Valley

Zen Center, Friends of Hidden Valley Zen Center, Buena Creek Action Group, Deer

Springs Oaks Action Group, Twin Oaks Valley Road Action Group, Lisa Amantea,

Michael Amantea, Darryl C. Bentley, Carol Bryson, Pamela J. Diniz, Stanley Diniz, Francis J. Eason, Rebecca Engel, Thomas Engel, Donald J. Folse, Elsie E. Gregory, Georgann Higgins, Claudia Hunsaker, Karen May, BJ McIntire, Cindi Peterson, Ana Cl Rosavall, James T. Rosvall, Katherine B. Rosvall, Leigh Rayner, Joanne Rizza, Darla Kennedy, and William R. Young.

Chatten Brown Carstens & Minteer, Jan Chatten-Brown and Josh Chatten-Brown for Petitioner Sierra Club.

Shute, Mihaly & Weinberger, William J. White and Edward Schexnayder for Petitioner Endangered Habitats League.

John Buse, Aruna Prabhala and Peter Broderick for Petitioner Center for Biological Diversity.

Law Offices of Roger B. Moore and Roger B. Moore for California Water Impact Network as Amicus Curiae on behalf of Petitioners.

Law Offices of Thomas N. Lippe and Thomas N. Lippe for Save Berkeley's Neighborhoods as Amicus Curiae on behalf of Petitioners.

First Amendment Project, James R. Wheaton and Paul Clifford for Natural Resources Defense Council, The First Amendment Project, Electronic Frontier Foundation, Californians Aware, Planning and Conservation League Foundation, and Environmental Law Foundation as Amici Curiae on behalf of Petitioners.

No appearance by Respondent.

Thomas E. Montgomery, County Counsel, Joshua M. Heinlein, Senior Deputy County Counsel; Sheppard, Mullin, Richter & Hampton, John E. Ponder, Whitney A. Hodges and Karin Dougan Vogel for Real Party in Interest County of San Diego.

Gatzke Dillon & Ballance, Mark J. Dillon, Kevin P. Sullivan and Kimberly A. Foy for Real Party in Interest Newland Sierra, LLC.

Best, Best & Krieger, Michelle Ouellette and Amy Hoyt for Real Party in Interest Dudek & Associates, Inc.

Byron & Edwards, Michael M. Edwards and Zachary M. Lemley for Real Parties in Interest Linscott, Law & Greenspan and Fehr & Peers.

Schwartz, Semerdjian, Cauley & Moot and Owen M. Praskievicz for Real Party in Interest Development Planning and Financing Group.

Chen, Horowitz & Franklin and Alexander J. Chen for Real Party in Interest Fuscoe Engineering.

Tyson & Mendes and Mitchel B. Malachowski for Real Party in Interest T.Y. Lin International Group.

Koenig Jacobsen and Gary L. Jacobsen for Real Party in Interest Leighton & Associates.

Motschenbacher & Blattner and Jeremy G. Tolchin for Real Party in Interest GSI Water Solutions, Inc.

Christopher Perez for Real Party in Interest AECOM.

Judkins, Glatt & Rich and David H. Getz for Real Party in Interest John Burns Real Estate Consulting.

3

Jennifer B. Henning for California State Association of Counties, League of California Cities, and California Special Districts Association as Amici Curiae on behalf of Real Party in Interest County of San Diego.

Public Resources Code[1] section 21167.6 prescribes the documents that "shall" be in the record of proceedings in a CEQA[2] challenge to an environmental impact report (EIR). For example, under subdivision (e)(7) of that statute, "[a]ll written evidence or correspondence submitted to, or transferred from" the public agency with respect to the project "shall" be included. Under subdivision (e)(10), the record "shall" also contain "all internal agency communications, including staff notes and memoranda" related to the project.

However, in this case the County of San Diego (County), as lead agency for the Newland Sierra project, no longer had "all" such correspondence, nor all "internal agency communications" related to the project. If those communications were by e-mail and not flagged as "official records," the County's computers automatically deleted them after 60 days. When project opponents propounded discovery to obtain copies of the destroyed e-mails and related documents to prepare the record of proceedings, the County refused to comply.

---

[1]    Undesignated statutory references are to the Public Resources Code.

[2]    California Environmental Quality Act (CEQA), section 2100 et seq.

4

After referring the discovery disputes to a referee, the superior court adopted the referee's recommendations to deny the motions to compel. The referee concluded that although section 21167.6 specifies the contents of the record of proceedings, that statute does not require that such writings be retained. In effect, the referee interpreted section 21167.6 to provide that e-mails encompassed within that statute are mandated parts of the record—unless the County has destroyed them first.

We disagree with that interpretation. Preparing a record under section 21167.6 is not an end in itself, but rather the means for judicial review of CEQA determinations. A thorough record is fundamental to meaningful judicial review. Therefore, we hold that section 21167.6 requires the lead agency to retain such writings.

Moreover, in this case, to the extent the writings sought are encompassed within section 21167.6, subdivision (e), they are "official records" under the County's e-mail retention policies. Thus, the County should not have destroyed such e-mails, even under its own policies.

The referee's erroneous interpretation of section 21167.6 is the cornerstone for all the challenged rulings. Accordingly, we will order a writ of mandate issue directing the superior court to vacate its orders denying the motions to compel and after receiving input from the parties, reconsider those motions in light of this opinion.

FACTUAL AND PROCEDURAL BACKGROUND

A. *The Parties and the Project*

Golden Door owns a spa and resort on approximately 600 acres in San Diego County. In January 2015, Newland Real Estate Group, LLC (Newland) proposed 2,135

5

new residential units and 81,000 square feet of commercial development (the Project) in close proximity to Golden Door's property. The County is lead agency for the Project.

B. *Golden Door's April 2014 Opposition to the Project*

In 2009, the County rejected a proposed development (known as Merriam Mountains) for the Project site. Golden Door had opposed Merriam Mountains because of its environmental impacts. Asserting that Newland's Project was "similar to the Merriam Mountains project that the Board of Supervisors rejected," in April 2014 Golden Door's attorneys wrote to the County, expressing concerns that the Project would create significant traffic and noise impacts, increase greenhouse gas emissions from greater vehicle miles traveled, violate the County's General Plan, impact biological resources, overextend the area's water supply, and create "noise and vibration from the many years of blasting that will be required to 'blast' the mountains as each phase of the project is constructed . . . ." The letter states these impacts "would significantly harm the Golden Door's business" and "construction of the Project could mean the end of the Golden Door," which had been operating since 1958. The letter ends by stating that Golden Door had "retained expert consultants" and would "continue to oppose the Project."

C. *The First Lawsuit—December 2016*

In December 2016—years before the Project EIR was certified—Golden Door filed a superior court petition for a writ of mandate and complaint for injunctive relief against Vallecitos Water District, the County, and Newland, entitled *Golden Door Properties, LLC v. Vallecitos Water District et al.* (Super. Ct. San Diego County, 2016, No. 37-2016-00037559-CU-WM-NC, hereafter the "Vallecitos case"). Generally

6

speaking, the complaint alleges that the water district will not have "sufficient water supply to serve the Newland Project," and the Project will adversely affect groundwater.[3]

D. *Golden Door's Public Records Requests*

In June 2017, the County released the Project's draft EIR (DEIR). The following month, Golden Door submitted a Public Records Act (Gov. Code, § 6250 et seq.; PRA) request to the County for the DEIR's technical analyses. Claiming that only the EIR consultants had possessory rights to these documents, the County refused production.

In October 2017, Golden Door's attorneys submitted another PRA request to the County, seeking contracts the County relied on to claim that the consultants alone had possessory rights to the technical reports. Days later, Golden Door's attorneys "clarified" that this PRA request encompassed " 'all documents and communications in the County's possession . . . pertaining to [the Project].' "

The Project's environmental review had been ongoing for nearly three years; however, in response to these PRA requests the County produced only 42 e-mails, covering only the 60-day period from September through October 2017. Golden Door's attorneys asked the County to explain how the Project could have generated only 42 e-

---

3 County administrative policies require an e-mail to be retained when "the user knows or has reason to know that the records may be evidence relevant to probable future litigation." Despite counsel's April 2014 letter and the 2016 Vallecitos case, the County did not place a litigation hold on Project-related e-mails until May 2018. Because we conclude that section 21167.6 requires the writings it describes be retained, it is unnecessary to consider Plaintiffs' additional contention that by April 2014 future litigation concerning the Project was probable.

7

mails. County counsel explained the County had a "60-day auto-deletion program for e-mails that do not meet the criteria for an official record."

Plaintiffs' attorneys received no response to their follow-up question, " 'Simply put, where are the e-mails from early 2015 to September 2017?' " They believed "that the County had destroyed all e-mail correspondence related to the [Project's] environmental review prior to September 2017."

E. *The County's 60-Day Automatic Deletion of E-mail Policy, in General*

Effective June 2008, County Administrative Manual item 0040-09-01 provides that after 60 days, "e-mail messages will be deleted automatically."[4] Effective June 21, 2018, item 0040-11 provides that after 60 days, e-mails will be permanently deleted. Item 0040-11 provides that "the e-mail user must determine, before 60 days, whether an e-mail needs to be saved . . . ." "Official record" e-mails must be retained at least two years.

Thus, if the County's e-mail user does not designate an e-mail as an "official record," by default the County permanently deletes that e-mail after 60 days—regardless of whether the e-mail was actually an "official record." County resolution 17-170 and item 0040-11 define "official record" as an e-mail (1) "made for the purpose of disseminating information to the public"; or (2) "made and kept for the purpose of memorializing an official public transaction"; or (3) "required by law to be kept"; or (4) "necessary and convenient to the discharge of a County officer's official duties and

---

4  References to "item" are to those in the County Administrative Manual.

8

was made or retained for the purpose of preserving its informational content." An "official record" excludes "preliminary drafts, notes, or inter- or intra-agency memoranda not kept in the ordinary course of business and the retention of which is not necessary for the discharge of a County officer's official duties."

F. *Golden Door's Additional PRA Requests*

"Alarmed" by the County's e-mail destruction policy, Golden Door made another PRA request "to preserve its rights." This encompassed documents already requested in October 2017.

In late May 2018, County counsel responded that nonofficial e-mails were automatically deleted "and there is not a record of the number of deleted e-mails." However, the County's attorney agreed to obtain and produce copies of deleted e-mails held by others, stating, "[T]he County will obtain and produce those records to which the County has a contractual right of possession pursuant to the provisions of the [consultant] contracts and agreements earlier produced." Later, however, the County reneged, refusing to produce the consultants' copies.

G. *DEIR Released; Golden Door Sues the Next Day* (*the Records Action*)

On June 18, 2018, the County released the Project's DEIR. The next day, Golden Door filed a superior court petition for a writ of mandate and complaint for declaratory and injunctive relief. This action, entitled *Golden Door Properties, LLC v. County of San Diego* (Super. Ct. San Diego County, 2018, No. 37-2018-00030460-CU-TT-CTL, hereafter the "Records Action"), is not a CEQA challenge to the EIR. The County had not certified the EIR yet.

9

The Records Action alleges: (1) use of unauthorized consultants to prepare the EIR technical studies; (2) failure to execute consultant memoranda of understanding (MOU) in accordance with County CEQA guidelines; (3) improper destruction of official records; and (4) improper withholding of records under the PRA. Golden Door sought an order directing the County to "[t]ake immediate steps to identify deleted/destroyed electronic official records, including e-mails, regarding [the Project] . . . and recover as many deleted/destroyed electronic records (including e-mails) as reasonably possible from both [Newland] and consultants for the [Project] . . . ."

In July 2018, the superior court (Judge Wohlfeil) entered a temporary restraining order (TRO), requiring the County to stop deleting Project-related e-mails. Citing section 21167.6, subdivision (e)(7), that order states, "[T]he documents making up the administrative record include '[a]ll written evidence or correspondence submitted to, or transferred from, the respondent public agency with respect to . . . the project.' "[5]

H. *The County Certifies the EIR and Approves the Project*

On September 24, 2018, Golden Door's attorneys urged the County Board of Supervisors (Board) to disapprove the Project on numerous grounds, including that "the

---

[5] After Newland filed a peremptory challenge to Judge Wohlfeil, the case was assigned to Judge Pollack.

10

County has been systematically destroying documents using its 60-day auto-delete policy . . . ."[6]  Two days later, the Board certified the EIR.

I.  *CEQA Litigation Commences*

In October 2018, Center for Biological Diversity and Endangered Habitats League (collectively, CBD) filed a superior court petition for a writ of mandate, declaratory, and injunctive relief against the County and Newland, challenging the Project's EIR and alleging the Project violated the General Plan.  (*Center for Biological Diversity et al. v. County of San Diego et al.* (Super. Ct. San Diego County, 2018, No. 37-2018-00054312-CU-TT-CTL), hereafter "the CBD Action").  Later, Sierra Club joined as plaintiff.  CBD elected to prepare the "administrative record."[7]

California Native Plant Society together with 31 others (including Golden Door) also filed a petition for a writ of mandate, declaratory, and injunctive relief against the County and Newland, entitled *California Native Plant Society et al. v. County of San Diego et al.* (Super Ct. San Diego County, 2018, No. 37-2018-00054559-CU-TT-CTL,

---

[6]    The referee sustained an objection to this evidence because it was submitted for the first time in reply papers.  However, as explained *post*, the evidence was responsive to Newland's defense and, therefore, should not have been excluded.

[7]    In CEQA litigation, "administrative record" is commonly used in place of the statutory term "record of proceedings."  (See *Consolidated Irrigation Dist. v. City of Selma* (2012) 204 Cal.App.4th 187, 195, fn. 2 (*CID*).)  We use the statutory term. (*Wagner Farms, Inc. v. Modesto Irrigation Dist.* (2006) 145 Cal.App.4th 765, 767, fn. 2.)

hereafter the "CEQA Action").[8]  The CEQA Action alleges that defendants violated:

(1) CEQA, in certifying the EIR and by "deleting public records regarding the project

every 60 days"; (2) planning and zoning law; (3) the Subdivision Map Act; and

(4) regulatory and zoning ordinances.  Several of the individual plaintiffs, along with

Golden Door, also alleged that the County violated their "rights to freedom of speech,

freedom of expression, equal protection, and due process" under the California and

United States Constitutions by conducting public hearings that discriminated against

speakers based on content, i.e., opposition to the Project.  The Hidden Valley Zen Center

alleged violation of federal law protecting "individuals, houses of worship, and other

religious institutions from the discriminatory and burdensome effects of zoning and land

use regulations."

In February 2019, the superior court consolidated the CBD and the CEQA

Actions.  Later, the court consolidated the Records Action with them for a single trial.[9]

---

[8]     The other CEQA Action plaintiffs and petitioners are:  Hidden Valley Zen Center, Friends of Hidden Valley Zen Center, Buena Creek Action Group, Deer Springs Oaks Action Group, Twin Oaks Valley Road Action Group, Golden Door Properties, LLC, Lisa Amantea, Michael Amantea, Darryl C. Bentley, Carol Bryson, Pamela J. Diniz, Stanley Diniz, Francis J. Eason, Rebecca Engel, Thomas Engel, Donald J. Folse, Elsie E. Gregory, Georgeann Higgins, Claudia Hunsaker, Michael Hunsaker, Karen May, BJ McIntire, Michael McIntire, Cindi Peterson, Ana C. Rosvall, James T. Rosvall, Katherine B. Rosvall, Leigh Rayner, Joanne Rizza, Darla Kennedy, and William R. Young.

[9]     References to "Plaintiffs" are to the plaintiffs and petitioners, collectively, in the three consolidated cases.

J. *Document Discovery and Subpoenas for Business Records*

      1. *Request to County in the Records Action*

In January 2019, Golden Door served the County with a request for production of documents under the Civil Discovery Act (Code Civ. Proc., §§ 2016.010-2036.050). The discovery requests seek the same documents that Golden Door had requested under the PRA. Golden Door asserted it needed these documents to prepare the record of proceedings.

From January through May 2019, the County produced 5,909 documents comprising nearly 170,000 pages.[10] However, the County objected to requests seeking documents: (1) "relating or pertaining to, concerning, or discussing" the County's compliance with Golden Door's PRA requests (request No. 4); (2) identifying persons responsible for compliance with document retention policies with respect to these PRA requests (request No. 7); and (3) relating to compliance with the MOU between the County, Newland, and certain EIR consultants.

      2. *Request to Newland in the CEQA Action*

In an attempt to obtain copies of deleted e-mails, the CEQA Action plaintiffs served Newland with a request for production of "[a]ll documents relating or pertaining to, concerning, or discussing the project or [Newland's] compliance with [CEQA] with respect to the project." However, Newland refused, claiming such documents were "not relevant to the County's record."

---

10    That number is staggering, but so also is the Project's 22,489 page EIR.

13

### 3. *Request to the County in the CEQA Action*

The CEQA Action plaintiffs also served the County with a request for documents (1) relating to the Project or the County's compliance with CEQA with respect to the Project; (2) created on or after January 1, 2014, related to Newland and related business entities; (3) relating to the Project and certain environmental consultants; and (4) discussing the manner or procedure for conducting the hearing of public testimony at Board of Supervisors meetings. Asserting numerous objections, and that it had already produced responsive "non-privileged, non-exempt documents . . . in the County's possession" under the PRA, the County produced no documents.

### 4. *Subpoenas to EIR consultants*

Golden Door also served two of the County's environmental consultants (Linscott, Law & Greenspan (LL&G) and Dudek & Associates (Dudek)) with business records subpoenas seeking (1) "project-related e-mails and written correspondence" regarding substantive land use or environmental issues between themselves and Newland; (2) "field notes, resource documents and supplemental technical studies" used in preparing the Project's EIR; and (3) all agreements and MOU's between themselves and Newland, and between themselves and any sub-consultant relating to the Project.

LL&G and Dudek objected, asserting that the CEQA case would be decided "*solely* on the administrative record that was before the County Board of Supervisors when it approved" the Project.

K. *Motions to Compel and Stipulation to Appoint Referee*

Golden Door filed motions to compel discovery and to require a privilege log for withheld documents. The parties stipulated to the appointment of the Honorable Ronald S. Prager (Ret.) as referee "for discovery matters in these cases" including "all future and additional discovery disputes as may be timely filed in the consolidated action . . . ."

L. *Referee's Rulings Adopted by the Superior Court*

Before the hearing, the County agreed to produce a privilege log. The motion to compel a privilege log was now moot, and the parties agreed to litigate privilege issues later if necessary. After conducting a hearing, the referee denied the other motions on the following grounds, which the superior court adopted without substantive change.

1. *No discovery of extra-record evidence*

Judicial review in this case is conducted "solely on the administrative record before the agency prior to approval." "Extra record evidence" is only admissible if the evidence could not have been produced with the exercise of reasonable diligence or was improperly excluded at the administrative hearing. The discovery sought by Golden Door does not "fit[] either of the limited exceptions for post-administrative hearing discovery."

2. *No prejudice*

Golden Door was not prejudiced because it had introduced "thousands of pages in the administrative record."

15

### 3. *Failure to exhaust administrative remedies; Forfeiture*

Golden Door did not exercise "reasonable diligence to place evidence on the record at the administrative hearing to show that the County was impermissibly deleting documents from the administrative record."  "Had Golden Door wished to include e-mails routinely deleted by the County . . . it could have made a timely request to the County to preserve them."

### 4. *Failure to prove documents were destroyed*

Golden Door did not make "any proper . . . showing that County employees destroyed any documents that they should have retained to allow them to conduct discovery to provide proof of such destruction."  Golden Door's "bald assertion that the County has improperly destroyed documents [is] unsupported by any credible evidence . . . ."

### 5. *The 60-day automatic deletion policy is lawful*

Section 21167.6 "is not a document retention statute but describes documents [to be] included in all CEQA proceedings."

### 6. *No PRA discovery*

Discovery is also not available under the PRA because "Golden Door has provided no substantiation for its allegations that the County has engaged in bad faith destruction of documents it was required to retain in a CEQA case."

### 7. *No constructive possession*

The County is not in constructive possession of documents held by Dudek and by LL&G and, therefore, need not produce those.

16

8. *Common Interest Doctrine applies*

Documents shared between Newland and the County are protected from disclosure by the common interest doctrine.

M. *The First Writ Petition in the Appellate Court*

In October 2019, Plaintiffs filed a petition in this court seeking a writ of mandate directing the trial court to grant the motions to compel, or in the alternative, "to enter judgment" in their favor on the ground that the County violated section 21167.6, subdivision (e). This court summarily denied the petition. Plaintiffs filed a petition for review in the California Supreme Court.

N. *Second Set of Motions to Compel, and the County's Motion to Quash*

Meanwhile, the County had produced a privilege log identifying 1,952 documents. Asserting the log was inadequate, the CEQA Action plaintiffs filed a motion to compel an amended privilege log.

Attempting to obtain copies of Project related e-mails that the County had destroyed, Golden Door had also served several of the EIR's environmental consultants (consultants) with business record subpoenas.[11] When the consultants refused production, Golden Door filed another motion to compel, asserting that "[d]iscovery of documents under the [c]onsultants' possession . . . may be the only means to recover information that the County concedes has been permanently deleted and is irrecoverable."

---

[11] The consultants are AECOM, Development Planning and Financing Group, Fehr & Peers, Fuscoe Engineering, Inc., GSI Water Solutions, Inc., John Burns Real Estate Consulting, Leighton & Associates, and T.Y. Lin International.

17

Additionally, Plaintiffs in the CEQA Action filed a motion to compel the County to provide further responses to a second request for production of documents seeking writings constituting the record of proceedings under section 21167.6 and to support claims of improper destruction and withholding of documents under the PRA. That request sought, among other writings (1) contracts or agreements between the County and Project consultants, and (2) documents regarding the County's compliance with the TRO.

The CEQA Action plaintiffs also filed a motion to compel Newland to provide further responses to a second request for production of documents. That request sought contracts, agreements, "or any other legally binding" document concerning the performance of services relating to the Project between Newland and the consultants.

Golden Door also sought to depose the County's person most knowledgeable about the County's document retention policies and procedures of public hearings. The County filed a motion to quash the deposition notice and sought monetary sanctions.

O. *Referee's Rulings*

The referee denied the motions to compel on the grounds that (1) the superior court's adoption of the referee's prior rulings and this court's summary denial of Golden Door's first writ petition was "rule of the case," and (2) "[t]hese motions are all predicated on the same flawed legal arguments already rejected by the . . . Court of Appeal." The referee granted the County's motion to quash and awarded $7,425 in sanctions. The superior court adopted this ruling, but struck the sanctions.

P. *The Second Writ Petition, Grant and Transfer, Consolidation*

In December 2019, Plaintiffs filed another mandate petition in this court, challenging the denial of the second set of motions to compel and the order granting the motion to quash. A week later, the California Supreme Court granted Golden Door's petition for review of this court's summary denial of the first writ petition. (*Golden Door Properties v. Superior Court*, case No. S258564, rev. granted Dec. 11, 2019.) The Supreme Court transferred the matter back to this court with directions to issue an order to show cause. After doing so, we also issued an order to show cause on the second writ petition (No. D076924) and consolidated these two proceedings.[12]

Q. *Motions to Augment the Record of Proceedings and The Third Writ Petition*

Meanwhile, in October 2019 the CEQA Action plaintiffs filed in the superior court a motion to augment the record of proceedings with documents "the County has omitted from the record." Petitioners in the CBD Action also filed a motion to augment to include "material that they submitted to the County well in advance of the County's approval of the Project and certification of the EIR."

The superior court mostly denied the motion, agreeing only that the record of proceedings should be augmented to include (1) new documents the County agreed to include from the Records Action; (2) 11 documents the County inadvertently excluded and which the County has agreed to include; and (3) "the few attachments to documents

---

[12] This consolidation renders moot Plaintiffs' request for judicial notice, filed December 6, 2019 in case No. D076924, of exhibit Nos. 1 through 130 to the writ petition filed in case No. D076605. The request for judicial notice is denied on that basis.

19

identified as inadvertently excluded" that the County agreed may be cited. In all other respects, the court denied the motions to augment.

Plaintiffs filed a (third) writ petition in this court, challenging this ruling (case No. D076993). We issued an order to show cause and consolidated it with the two other pending petitions.[13]

## DISCUSSION

### I. *THE WRIT PETITIONS ARE NOT MOOT*

A. *Factual Background*

On March 3, 2020, by referendum San Diego County voters disapproved the general plan amendment for the Project.[14] A few weeks later, Newland informed the County that "[d]ue solely to the referendum vote on the General Plan Amendment, we have decided to take steps to seek withdrawal of the Newland Sierra Project Approvals." Newland asked the Board to "take official action to rescind the Newland Sierra Project Approvals . . . for the sole reason stated."

In April 2020, the Board rescinded and vacated the Project's EIR, General Plan Amendment, specific plan, zoning change, statement of reasons to eliminate access to mineral resources, and amendment to the resource protection ordinance to add an

---

[13] This consolidation renders moot Plaintiffs' request for judicial notice, filed December 18, 2019 in case No. D076993, of Exhibit Nos. 1 through 130 to the writ petition filed in case No. D076605 and Exhibit Nos. 131-170 to the petition filed in case No. D076924. The request for judicial notice is denied on that basis.

[14] The 58 percent voting to disapprove the Project undercuts the County's claim that Plaintiffs are acting "against the public interest" in seeking to stop the Project.

20

exemption for the Project's specific plan and approving a resource protection plan adopted on October 10, 2018.[15] We asked the parties to brief whether these events render the writ petitions moot. (*City of Hollister v. Monterey Ins. Co.* (2008) 165 Cal.App.4th 455, 479 [appellate court may examine mootness on its own motion].)

B. *Legal Principles*

"[A] moot case is one in which there may have been an actual or ripe controversy at the outset, but due to intervening events, the case has lost that essential character and, thus, no longer presents a viable context in which the court can grant effectual relief to resolve the matter." (*Association of Irritated Residents v. Department of Conservation* (2017) 11 Cal.App.5th 1202, 1222.) For example, "a lawsuit challenging the validity of city resolutions to approve the construction of a retail development project became moot once that project was substantially completed. [Citation.] A proceeding challenging a civil service eligibility list . . . was found to be moot once the former list had expired and been superseded by a new list." (*Ibid*.)

---

[15] The court grants Plaintiffs' request for judicial notice, filed April 29, 2020 with respect to exhibit Nos. 36 and 37 [Board of Supervisors statements of proceedings] only. Requests 38 through 42 are denied as not relevant to the disposition of this issue. (*People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 422, fn. 2 (*Shamrock Foods*).) The court grants real parties in interest request for judicial notice filed April 24, 2020 only with respect to exhibit No. 1, page 2 [election results, Measure B], exhibit No. 2, and exhibit No. 6, Minute Order No. 4. exhibit Nos. 3 through 5 contain irrelevant matters.

C. *The Writ Petitions Are Not Moot Because Some Approvals Remain*

Under CEQA, "[t]he purpose of an environmental impact report is to identify the significant effects on the environment of a project, to identify alternatives to the project, and to indicate the manner in which those significant effects can be mitigated or avoided." (§ 21002.1, subd. (a).) Accordingly, where the issues on appeal concern the adequacy of the EIR for a project that will not be implemented, the appeal is generally moot. (*Coalition for a Sustainable Future in Yucaipa v. City of Yucaipa* (2011) 198 Cal.App.4th 939, 941 (*Yucaipa*) [appeal moot where developer abandoned project and lead agency rescinded the resolutions approving the project].)

Citing *Yucaipa*, the County and Newland contend these proceedings are moot because the Board rescinded "all Project approvals and the EIR certification." They assert that the writ petitions have "the end goal of undermining the Project's EIR and setting aside the Project approvals." The County and Newland contend that "no 'live controversy' remains to be decided" because the discovery requests that are the subject of these writ proceedings "are predicated on the alleged incomplete CEQA administrative record that is no longer needed."

However, the County has not rescinded "all Project approvals." As Golden Door points out, there are several Project-related approvals that the Board did not rescind or vacate. The Board did not rescind or vacate the County's approval of the Project's tentative map. Likewise, as part of the Project approvals, the Board required certain road modifications and an updated Transportation Impact Fee Program to incorporate

22

Newland Sierra's General Plan Amendment. However, the Board's April 21, 2020 action rescinding Project approvals omits these approvals.

*Yucaipa* does not apply where the challenged approvals have not all been rescinded. (See *Banning Ranch Conservancy v. City of Newport Beach* (2012) 211 Cal.App.4th 1209, 1225, fn. 6.) The writ petitions are not moot because rescission of Project approvals is incomplete.

D. *The Petitions Are Not Moot Because Newland Has Indicated an Intent to Proceed with the Project*

In the superior court, Newland's attorney stated that Newland had spent $10 million on the EIR—and even with an adverse outcome on the referendum—"[t]here are a number of things" Newland could do to keep the Project viable. Newland's attorney elaborated:

> "[Newland's attorney]: That EIR cost $10 million to prepare. That EIR has independent value if it is judicially validated by this court. [¶] We're entitled to know if that EIR under CEQA is valid or not regardless of whether there's a vote. So we could use that EIR, if judicially validated, for the other project approvals; we can use it for federal and state permitting. . . .
>
> "The court: But if the referendum goes against you, can the Newland Sierra project be built?
>
> "[Newland's attorney]: Your Honor, it's going to be—that's a tough question to answer because—because their referendum cherry-picked one of the many approvals, just the General Plan Amendment. We brought a specific plan, we brought a rezone, we brought a tentative map. Those are not the subject of the referendum.
>
> "The court: But if the General Plan doesn't allow for it, then how can we have a project?

23

"[Newland's attorney]:  So maybe we—maybe there's a way. . . . [¶]  [I]f the vote is adverse, we can decide how [the validated EIR] can be used to amend a project application, whether we've got to go back and seek additional project approval to fix the General Plan Amendment.  *There are a number of things we can do*. . . .  (Italics added.)  [¶]  If [the referendum vote is] not favorable, if we still have an EIR that's valid, maybe we can amend a project approval request.  Maybe we can do—there are other things we can do.  But if we have to go back and redo an EIR which took four years to do and $10 million, that's just not an appropriate part of a CEQA case . . . .

"The court:  But if the General Plan doesn't allow it to be built—

"[Newland's attorney]:  Then maybe there is a way we can—after the vote, maybe there's another project application we can make, and we can rely on that valid EIR . . . .  We might be able to make a new project application and we won't have to go through a four-year effort . . . .  [¶] . . . [¶]

"The court:  So you would just come up with a different project?

"[Newland's attorney]:  We could maybe come up with a different project. . . .  [¶]  [I]f the one project approval, the General Plan Amendment, if that discretionary project approval is overturned by way of the referendum, there might be other amended discretionary project approvals we can seek to correct it."[16]

E.  *Even If Moot, We Exercise Discretion to Decide the Cases*

The appellate court has the inherent power to retain a moot case under three discretionary exceptions:  (1) the case presents an issue of broad public interest that is likely to recur; (2) the parties' controversy may recur; and (3) "a material question

---

[16]     These comments also belie the County's claim that delay caused by Plaintiffs' discovery requests "increases the likelihood that Newland will be forced to abandon the Project due to the protracted litigation, uncertainty, and additional costs."

24

remains for the court's determination [citation]." (*Cucamongans United for Reasonable Expansion v. City of Rancho Cucamonga* (2000) 82 Cal.App.4th 473, 479-480.)

By granting review and directing this court to vacate its dismissal and issue an order to show cause, the Supreme Court implicitly determined the e-mail destruction issue is an important one with statewide significance. Moreover, a reasonable conclusion from above-quoted colloquy between the superior court and Newland's attorney is that the issues will likely recur. As such, *Cook v. Craig* (1976) 55 Cal.App.3d 773 is instructive. There, plaintiffs submitted a PRA request for certain California Highway Patrol (CHP) procedures governing citizens' complaints of police misconduct. (*Id*. at p. 777.) While the case was pending, the CHP voluntarily disclosed the information sought. (*Id*. at pp. 779-780.) However, there was no assurance that the CHP's voluntary disclosure had been complete. (*Id*. at p. 780.) Moreover, the CHP continued to maintain that it could withhold similar information in the future. (*Ibid*.) The court found the matter affected the public generally, could recur, and declined to dismiss the case as moot. (*Ibid*.)

A similar analysis is even more compelling here, where (1) Newland's attorney has indicated the Project will likely return; and (2) the County insists it may lawfully destroy

e-mails described in section 21167.6 to be retained.  Accordingly, even if these proceedings were moot, we exercise discretion to decide them.[17]

## II.  *THE COUNTY'S E-MAIL DESTRUCTION POLICY IS UNLAWFUL WHEN APPLIED TO A CEQA CASE UNDER SECTION 21167.6*

A.  *Section 21167.6*

Section 21167.6 provides in part:

> "Notwithstanding any other law, in all actions or proceedings brought pursuant to Section 21167 [alleging CEQA non-compliance], all of the following shall apply:  [¶] . . . [¶]
>
> "(e) The record of proceedings shall include, but is not limited to, all of the following items:  [¶] . . . [¶]
>
> "(7)  All written evidence or correspondence submitted to, or transferred from, the respondent public agency with respect to compliance with this division or with respect to the project.  [¶] . . . [¶]
>
> "(10) Any other written materials relevant to the respondent public agency's compliance with this division or to its decision on the merits of the project, including . . . all internal agency communications, including staff notes and memoranda related to the project or to compliance with this division."

This statute has been interpreted to include " 'pretty much everything that ever came near a proposed development or to the agency's compliance with CEQA in

---

17    On the mootness issue, Plaintiffs' request for judicial notice, filed April 9, 2020, is denied with respect to exhibit Nos. 29 through 35 (filed documents in other litigation involving the County) because those exhibits are not relevant.  (*Shamrock Foods*, *supra*, 24 Cal.4th at p. 422, fn. 2.)  The request for judicial notice of exhibit No. 35, an e-mail exchange, is denied also because it is not properly the subject of judicial notice.  (See *LaChance v. Valverde* (2012) 207 Cal.App.4th 779, 783 [denying request for judicial notice of e-mail].)

26

responding to that development.' " (*Madera Oversight Coalition, Inc. v. County of Madera* (2011) 199 Cal.App.4th 48, 64 (*Madera Oversight*).)[18]  A trial court has no discretion to exclude matters the statute makes a mandatory part of the record.  (*CID*, *supra*, 204 Cal.App.4th 187, 191.)

Plaintiffs contend that by mandating the contents of the record of proceedings, section 21167.6 necessarily requires that such writings not be destroyed before the record is prepared.  The issue appears to be one of first impression; accordingly, we begin with principles of statutory interpretation.

B.  *Section 21167.6 is Mandatory and Broadly Inclusive*

"In interpreting statutes, we begin with the plain and commonsense meaning of the language of the statute, considering it in the context of the statutory framework as a whole to determine its scope and purpose, with a goal of harmonizing the parts of the statutes.  [Citation.]  Where the language is clear, we follow the plain meaning of the statute, unless doing so would result in absurd consequences unintended by the Legislature."  (*In re Marriage of Brewster and Clevenger* (2020) 45 Cal.App.5th 481, 502-503.)

Section 21167.6 is mandatory in two respects.  First, it applies "[n]otwithstanding any other law."  This "declares the legislative intent to override all contrary law. [Citation.]  By use of this term, the Legislature expresses its intent 'to have the specific

---

18    *Madera Oversight* was disapproved on other grounds in *Neighbors for Smart Rail v. Exposition Metro Line Const. Auth.* (2013) 57 Cal.3d 439, 512.

statute control despite the existence of other law which might otherwise govern.' " (*Klajic v. Castaic Lake Water Agency* (2004) 121 Cal.App.4th 5, 13.)  Therefore, to the extent County administrative policies provide for the destruction of e-mails that section 21167.6 mandates to be retained, section 21167.6 controls.

Second, as used in the Public Resources Code, the word "shall" is mandatory. (§ 15).  In enumerating the contents of the administrative record in a CEQA challenge, section 21167.6, subdivision (e) states that the record "shall include . . . all of the following items . . . ."

In addition to being mandatory, by using "all" and "any," section 21167.6 is also broadly inclusive.  The record of proceedings must contain "[a]ll written evidence or correspondence submitted to, or transferred from, the respondent public agency with respect to compliance with this division or with respect to the project."  (§ 21167.6, subd. (e)(7).)  " 'All' is a word of inclusion . . . .  [It means] 'the whole of' or 'the greatest quantity.' "  (*Church v. Jamison* (2006) 143 Cal.App.4th 1568, 1580.)

Section 21167.6 also requires the record of proceedings to include "[a]ny other written materials relevant to the respondent public agency's compliance with this division or to its decision on the merits of the project, including . . . all internal agency communications, including staff notes and memoranda related to the project or to compliance with this division."  (§ 21167.6, subd. (e)(10).)  " 'Any' is a term of broad inclusion, meaning 'without limit and no matter what kind.' "  (*Lopez v. Sony Electronics, Inc.* (2018) 5 Cal.5th 627, 635.)

28

These terms are unambiguous.  "All" and "any" mean all and not some.  Therefore, contrary to the County's assertions and the referee's determination, "all . . . correspondence submitted to, or transferred from" the agency, and "all internal agency communications[] including staff notes" as used in section 21167.6, subdivision (e) cannot reasonably be interpreted to mean all written materials, internal agency communications, and staff notes *except* those e-mails the lead agency has already destroyed.

Interpreting section 21167.6 to require that documents within its scope be retained is also consistent with core CEQA policies.  "If CEQA is scrupulously followed, the public will know the basis on which its responsible officials either approve or reject environmentally significant action, and the public, being duly informed, can respond accordingly to action with which it disagrees.  [Citations.]  The EIR process protects not only the environment but also informed self-government."  (*Laurel Heights Improvement Assn. v. Regents of University of California* (1988) 47 Cal.3d 376, 392.)  "Political accountability, informed self-government and environmental protection are promoted by the information and disclosure functions of CEQA."  (*POET, LLC v. State Air Resources Bd.* (2013) 218 Cal.App.4th 681, 715, fn. 23.)

The County contends that section 21167.6 "does not mandate document retention" but instead "lists documents to be included in a CEQA record."  We fail to see the distinction.  It would be pointless for the Legislature to have enumerated mandatory contents of the record of proceedings if, at the same time, a lead agency could delete such

29

writings not to its liking, and then claim they are not in the record because they no longer exist.

Moreover, the evidentiary record will consist of the record of proceedings, with only limited opportunities to augment that record. (See 2 Kostka & Zischke, *Practice Under the Environmental Quality Act* (Cont. Ed. Bar 2020 update), § 23.49 (*Kostka & Zischke*).) Therefore, a complete and thorough record under section 21167.6 is crucial to enable the judicial branch to fulfill its CEQA role in assuring the agency's determinations are lawful and supported by substantial evidence.

In light of the plain language in section 21167.6 and these policies, we hold that a lead agency may not destroy, but rather must retain writings section 21167.6 mandates for inclusion in the record of proceedings.

Disagreeing with this interpretation and citing section 21083.1, the County asserts that courts are "prohibited from applying CEQA or CEQA Guidelines to impose requirements beyond those explicitly stated in CEQA."[19] However, our interpretation of section 21167.6 complies with section 21083.1. As explained, section 21167.6 is explicitly mandatory ("shall") and inclusive ("any" and "all"). To give effect to the

---

[19] Section 21083.1 provides: "It is the intent of the Legislature that courts, consistent with generally accepted rules of statutory interpretation, shall not interpret this division or the state guidelines adopted pursuant to Section 21083 in a manner which imposes procedural or substantive requirements beyond those explicitly stated in this division or in the state guidelines."

30

explicit statutory language requires that the mandated writings not be intentionally destroyed.

C. *CEQA Guidelines on Document Retention Are Not Exclusive*

In asserting that section 21167.6 should not be construed to require document retention, the County contends that "the CEQA Guidelines make clear which types of documents must be retained for specific periods of time." For example, a lead agency must retain comments on a draft EIR and must retain the final EIR "for a reasonable period of time." (Cal. Code Regs., tit. 14, §§ 15095, subd. (c), 15208.)[20] Similarly, certain CEQA notices must be retained for specified time periods. (E.g., Guidelines, §§ 15094, subd. (e) [notice of determination], 15062, subd. (c)(2) [notice of exemption].) The County contends that a lead agency is required to retain only those writings that CEQA Guidelines or a statute so designates. The referee agreed.

However, CEQA Guidelines are not enacted by the Legislature. They are promulgated by the Office of Planning and Research (OPR), for adoption by the Secretary of Resources. (Guidelines, § 15000 et seq.) The Guidelines are only an indirect manifestation of legislative intent. (*County of San Diego v. Bowen* (2008) 166 Cal.App.4th 501, 511.) The unambiguous mandatory and inclusive language in section 21167.6 itself is the most reliable indicator of legislative intent.

---

[20] The CEQA Guidelines in title 14 of the California Code of Regulations, section 15000 et seq., are hereafter cited as Guidelines.

Moreover, Guidelines addressing document retention serve functions entirely apart from the purposes served by the record of proceedings. The date of issuing the notice of determination, for example, triggers the time for commencing an action alleging that a public agency has improperly determined whether a project may have a significant effect on the environment. (§§ 21167, subd. (b), 21152, subd. (a).) Similarly, the date a notice of exemption is filed triggers the time for filing an action challenging that determination. (§§ 21167, subd. (d), 21152, subd. (b).) Especially given the short time provided to commence such actions, it is not surprising that the documents triggering these limitations periods must be publicly available.

In contrast, the purpose of section 21167.6 is not only to provide public information of the government's environmental decisionmaking, but also to ensure meaningful *judicial review* of those decisions. This intent is manifest in section 21167.6 itself, which provides that it applies "in all actions or proceedings brought pursuant to section 21167" (except those involving the Public Utilities Commission). Section 21167 addresses "[a]n action or proceeding to attack, review, set aside, void, or annul" certain acts or decisions of a public agency "on the grounds of noncompliance" with CEQA, including an action challenging the validity of an EIR. (§ 21167, subd. (c).) As amici curiae for the County acknowledge, "The purpose of the administrative record in CEQA litigation is . . . to allow a court to determine whether the record demonstrates any legal error and whether it contains substantial evidence to support the agency's decision on a project." It is inconceivable that in enacting section 21167.6, the Legislature intended

32

that only the EIR itself and the few documents identified for retention in CEQA

Guidelines must be retained for these purposes.

Moreover, the County's and Newland's interpretation of section 21167.6 would

enable an agency to prune the record by deleting unfavorable "internal agency

communications, including staff notes and memoranda related to the project."

(§ 21167.6, subd. (e)(10).) However, existing law prohibits a lead agency from

"pick[ing] and choos[ing] who sees pertinent data." (See *Communities for a Better

Environment v. City of Richmond* (2010) 184 Cal.App.4th 70, 88.)

D. *The Court Erred by Applying Rules for Extra-Record Evidence*

In denying the motions to compel, the referee's analysis of section 21167.6 went

off track from the start. The order begins by citing *Western States Petroleum Assn. v.

Superior Court* (1995) 9 Cal.4th 559 (*Western States*) for the proposition that judicial

review by writ of administrative mandate is based solely on the record of the proceeding

before the administrative agency prior to project approval, and extra-record evidence—

that is, evidence outside the record—is admissible in only two narrow circumstances.[21]

---

[21] The narrow circumstances are that the evidence was (1) unavailable at the time of the administrative hearing; or (2) improperly excluded from the record. (*Western States*, *supra*, 9 Cal.4th at p. 569.) In one of the petitions filed in this court, Plaintiffs state that even if they were seeking "extra-record" evidence, "it would be admissible because the evidence was unavailable at the administrative hearing due to the agency's unlawful document destruction . . . ." However, this argument is not contained under a separate heading and is undeveloped. Accordingly, we do not consider it. (*Okorie v. Los Angeles Unified School District* (2017) 14 Cal.App.5th 574, 599 [matters lacking adequate legal discussion forfeited]; *Cox v. Griffin* (2019) 34 Cal.App.5th 440, 453-454.)

Asserting that Plaintiffs did not satisfy the "limited exceptions" for extra-record evidence, the referee concluded that discovery was "almost entirely, if not completely, precluded."

Although *Western States* is well-settled law, Plaintiffs were not seeking extra-record evidence. Plaintiffs were seeking discovery of record evidence—that is, documents section 21167.6 mandates to *be* the record. For example, Plaintiffs request for production (set one) to Newland sought Newland's communications with the County regarding the Project. Likewise, Plaintiffs request for production of documents to the County (set one) sought all documents relating to the Project or the County's compliance with CEQA with respect to the Project. These requests described documents squarely within section 21167.6, subdivision (e)(7), which provides that the record of proceedings "shall" contain "[a]ll written evidence or correspondence submitted to, or transferred from, the respondent public agency with respect to compliance with [CEQA] or with respect to the project." Internal agency communications about the Project are within the scope of Plaintiffs' request for "all documents relating to the Project." Indeed, a CEQA practice guide states, "Internal staff communications relevant to the agency's compliance with CEQA or its decision on the merits of the project are also part of the record under [section] 21167, [subdivision] (e)(10)." (*Kostka & Zischke*, *supra*, at § 23.75.)

In this case, the key was recognizing this distinction between (1) writings properly included in the record of proceedings under section 21167.6 and (2) those outside the record, which constitute extra-record evidence. The court in *Madera Oversight* explained, "[T]here are two distinct ways to place evidence before the superior court in a CEQA matter: The evidence can be (1) included in the [record of proceedings] pursuant

34

to the provisions of subdivision (e) of section 21167.6 or (2) admitted as *extra-record evidence*." (*Madera Oversight*, *supra*, 199 Cal.App.4th at p. 62.) "[T]he proper method of analysis for determining whether a particular item should be considered as evidence in a CEQA matter is to determine first whether the item is part of the [record of proceedings] pursuant to subdivision (e) of section 21167.6. If the item does not qualify for inclusion in the [record of proceedings], then its admissibility can be determined under the rules applicable to extra-record evidence." (*Ibid.*)

Here, the referee's error is in skipping the first *Madera Oversight* determination (whether the item is part of the record under section 21167.6), and instead going directly to the second (are the narrow limitations for allowing extra-record evidence met). The referee's analysis addressed *whether* evidence not contained in the record is nevertheless admissible as extra-record evidence. However, the issue presented by the discovery motions was distinctly different—*what* writings are mandatory parts of the record of proceedings? The answer to that question is not in *Western States*, but rather in section 21167.6, subdivision (e), a statute the referee expressed unfamiliarity with at the hearing.[22]

---

[22] Near the end of the second hearing, this colloquy between Plaintiffs' counsel and the referee occurred:

"The referee: What's the section that you keep referring to?
"Mr. Garrett: Public Resources Code 21167.6.
"The referee: And that's cited?
"Mr. Garrett: Yes."

35

In his second group of rulings months later, the referee stated, "Golden Door further contends that extra-record evidence is admissible, because it is preparing the record and has determined that certain extra-record [evidence] items must be included." This statement reflects a similar and continuing misunderstanding. Plaintiffs were *not* contending that "extra-record" evidence is admissible. Rather, Plaintiffs asserted that discovery of *record* evidence (as enumerated in § 21167.6, subd. (e)) was not only appropriate, but necessary because Plaintiffs had elected to prepare the record of proceedings. At a hearing, Plaintiffs' counsel explained this distinction:

> "*Western States* doesn't deal with the situation where there's a statute that says the following documents are to be in the record but the agency has destroyed them beforehand.
>
> "So we're making an argument that these documents are supposed to be in the record under the Public Resources Code. They're not extra record documents. They're record documents that should have never been destroyed. [¶] . . . [¶]
>
> "And . . . they were supposed to be in the record. They are not extra record evidence."

A similar issue arose in *San Francisco Tomorrow v. City and County of San Francisco* (2014) 229 Cal.App.4th 498 (*SF Tomorrow*). The section 21167.6 issue there involved audio recordings included by the public agency in the record of proceedings. However, that evidence was not before the decision maker when it certified the EIR. The issue on appeal was whether evidence within the scope of section 21167.6—but not actually before the agency when it made its decision—was properly in the record of proceedings. Determining that the transcripts "are within the scope of [section] 21167.6,"

36

the trial court ordered the transcripts were included in the record.  (*SF Tomorrow*, at p. 530.)

On appeal, the court in *SF Tomorrow* held that audio records and their transcripts were mandatory parts of the record under section 21167.6, subdivision (e)(10) ["other written materials relevant to the respondent public agency's . . . decision on the merits of the project"].  (*SF Tomorrow*, *supra*, 229 Cal.App.4th at p. 532.)  Therefore, the transcripts were "*required* to be included in the administrative record" even if not before the decision makers when they approved the project.  (*Ibid*.)

Citing *Western States*, the appellants in *SF Tomorrow* made an argument strikingly similar to the one the County and Newland make here—that evidence not in front of the decision makers when they made their decision is necessarily extra-record evidence.  (*SF Tomorrow*, *supra*, 229 Cal.App.4th at p. 532.)  The Court of Appeal rejected that argument, stating:

> "Relying upon [*Western States*, *supra*, 9 Cal.4th 559] appellants contend the . . . hearings evidence was not *before the decision makers when they made their decision.*  However, *Western States* did not concern the issue of what documents were properly included in the administrative record.  Rather, it addressed the issue whether evidence admittedly *not contained in the administrative record* was admissible in a traditional mandamus action under CEQA to determine that the agency had abused its discretion . . . ."  (*SF Tomorrow*, *supra*, 229 Cal.App.4th at p. 532.)

*SF Tomorrow* compels the same result here.  Otherwise, a lead agency could intentionally destroy a document that section 21167.6 mandates be included in the record, and then claim the document should be excluded because, by the very act of wrongful destruction, it was not before the decision maker when it made CEQA determinations.

37

E.  *Other Authorities Cited in the Recommendation Do Not Support the Ruling*

In denying the motions, the referee also ruled that the County's e-mail destruction policies are lawful under:  "Government Code sections 6200, 6201, 6250, 6252, 6254 [subdivision] (a), 26205.1; California Attorney General Opinion 63 Ops.Cal.Atty.Gen. 317; and County Board Resolution No. 17-0170 adopted pursuant to Government Code section 26205.1."[23]  However, as discussed next, none of these support the ruling.

1.  *Government Code Sections 6200 and 6201 Are Inapt*

Government Code section 6200 describes a felony—a custodial officer's theft, destruction, alteration, or falsification of "any record, map, or book, or . . . any paper or proceeding of any court . . . ."  Government Code section 6201 is similar, but makes such conduct a misdemeanor when committed by a noncustodial officer.

The referee's recommendation does not explain how statutes criminalizing document destruction support the County's alleged destruction of e-mails encompassed within section 21167.6, subdivision (e).  Attempting to fill that void, the County contends that a criminal conviction is the "exclusive remedy" for willful destruction of records.

Given the County's admissions that it has destroyed Project-related e-mails that it deemed to be not official records (despite knowing in 2014 that Golden Door opposed the Project and in 2016 had sued the County and Newland)—this is a startling argument. The County also fails to explain how the existence of a criminal statute prohibiting

---

23     With the exception of the citation to the Attorney General opinion, this string cite is taken verbatim from the County's opposition to Plaintiffs' motion to compel.

document destruction would relieve a lead agency of its obligation to maintain mandatory components of the record under section 21167.6.

### 2. *The Attorney General Opinion*

The referee's citation to "63 Ops.Cal.Atty.Gen. 317" is an apparent mistake, since the cited volume and page discuss a tax issue. In opposition papers, the County cited Volume 64, not 63. That attorney general opinion addresses whether tape recordings of city council meetings constitute a "record" under the PRA and if so, when the recording may lawfully be destroyed. Assuming this is what the referee intended to cite, it is off-point. Public Resources Code section 21167.6, a statute not considered in the cited Attorney General opinion, governs here.

### 3. *PRA Statutes*

To the extent Government Code section 6250, also cited by the referee, applies in this case, it undercuts the rulings. That statute, part of the PRA, declares, "[A]ccess to information concerning the conduct of the people's business is a fundamental and necessary right of every person in this state." The rulings do not explain how a statute intended to foster public access to government information is furthered by approving government destruction of e-mails encompassed within section 21167.6, subdivision (e).

Another PRA statute cited, Government Code section 6252, defines "local agency," "member of the public," "person," "public agency," "public records," "state agency," and "writing." The third in this group cited, Government Code section 6254, subdivision (a), provides for certain exemptions from disclosure under the PRA. As

39

discussed *post*, the ruling upholding the County's claim that 1,900 documents are exempt under that statute is itself problematical.

### 4. *Government Code Section 26205.1*

Of all the string cites, Government Code section 26205.1 comes the closest to supporting the referee's recommendations, but it too fails. That statute provides that a "nonjudicial record" may be destroyed at any time and without making an electronic copy if the document is (i) not prepared or received pursuant to statute; and (ii) not expressly required by law to be filed and preserved, so long as the Board of Supervisors adopts a resolution authorizing destruction pursuant to this section. (Gov. Code, § 26205.1, subdivision (b).) Under this statute, the board's resolution "may impose conditions . . . that the board of supervisors determines are appropriate." (*Id*., § 26205.1, subd. (a)(1).)

Thus, to destroy records under Government Code section 26205.1, the County has to show that (1) the document was not prepared pursuant to statute; (2) the document was not expressly required by law to be filed and preserved; (3) the Board of Supervisors has adopted a resolution authorizing destruction of records under this statute; and (4) the County has complied with any additional conditions that the Board of Supervisors have imposed.

Even assuming without deciding that the first three elements are satisfied, the fourth element is not. In November 2017, the Board adopted resolution 17-170 authorizing e-mail destruction under Government Code section 26205.1. That resolution authorizes the "Chief Administrative Officer" to "destroy 'records, documents,

40

instruments, books and papers' pursuant to Government Code section 26205.1, [and] other relevant laws and . . . conditions imposed herein by the Board of Supervisors and the policies and procedures, including record retention schedules, implemented by the Chief Administrative Officer."  Resolution 17-170 further provides that an "official record" is "a paper or electronically-stored Document in the County's possession" that, among other things, "is required by law to be kept . . . ."  The resolution provides that "Official Records must be kept for a minimum of two (2) years," unless a shorter time is prescribed by law.

As explained *ante*, documents described in section 21167.6, subdivision (e)(7) and (10) are required by law to be kept.  Therefore, under Government Code section 26205.1 and Resolution 17-170, such documents were required to be retained at least two years.

### 5.  *Government Code Section 21152 and Guidelines Section 15094*

Citing Government Code section 21152, subdivision (c), and Guidelines section 15094, subdivision (e), the referee also determined that "non-official record e-mails are not 'required by law' to be retained and included in the administrative record."  However, these statutes do not support that conclusion.  The citation to Government Code section 21152 must be a mistake.  That statute concerns disability retirement.  The referee probably meant Public Resources Code section 21152, which provides for the filing of a notice of determination.  This is consistent with the referee's companion citation to Guideline section 15094, subdivision (e), which provides that a notice of determination filed with the county clerk "shall be available for public inspection" and shall be retained for not less than 12 months.  However, as explained *ante*, it is not reasonable to infer that

41

by requiring a notice of determination to be retained, the Legislature intended that writings enumerated in section 21167.6, subdivision (e) may be destroyed before the record of proceedings is prepared.

### 6. *E-mails and preliminary drafts*

The referee also determined that "[n]on-official e-mails and other preliminary drafts are not included in CEQA section 21167.6[, subdivision] (e) . . . ." The problem here is that by describing certain writings as "non-official e-mails *and other* preliminary drafts," the referee seemingly equates non-official e-mails with preliminary drafts. However, e-mail is a method of communication, whereas a preliminary draft describes content. To describe a communication as a non-official record "e-mail" says nothing about whether it is a final or instead a preliminary draft.

E-mail is often used as the mode of communicating brief and nonsubstantive messages that were once conveyed by telephone or a sticky note left on a coworker's desk. But e-mail, especially combined with the ability to attach documents, is also used to communicate important information previously sent by mail or private delivery service. Thus, even assuming without deciding that preliminary drafts of certain content are not included in section 21167.6, the referee's analysis errs by conflating the mode of

42

communication (e-mail) with such content.[24]  Moreover, section 21167.6, subdivision (e)(10) expressly requires certain preliminary drafts—namely, "any drafts of any environmental document, or portions thereof, that have been released for public review"—to be included in the record of proceedings.

### 7. *Other Agencies Destroy E-mails*

The County also claims that its 60-day automatic e-mail deletion policy "comports with other agencies' practices and recommendations."  However, even if that were true, the validity of the County's policy as applied in a CEQA case is not based on a popularity poll, but rather on the statutory language interpreted in light of CEQA policies and goals.

In a related argument, the County contends, "The [California] Secretary of State's 'Local Government Records Management Guidelines' recommend that local agencies not retain e-mails."  The County claims that Secretary of State guidelines provide that e-mails are " 'not usually included within the definition of records, such as unofficial copies of documents kept only for convenience or reference, working papers, appointment logs . . . [or] rough notes, calculations or drafts assembled or created and used in the preparation . . . of other documents.' "

---

24    "Administrative drafts of EIRs, EIR working papers, draft staff reports, and similar preliminary documents that preceded the documents circulated for public review or submitted to the decision-making body are not treated as part of the record of the agency's proceedings.  Reports and studies prepared for the project and relied on in an environmental document for the project are, however, part of the record if they are made available to the public during the public review period or included in the agency's files on the project.  Internal staff communications relevant to the agency's compliance with CEQA or its decision on the merits of the project are also part of the record . . . ." (*Kostka & Zischke*, *supra*, at § 23.73.)

This argument distorts the guidelines it purports to quote. The cited portion of the Local Government Records Management Guidelines does not even contain the word "e-mail." Rather, it defines "Non-records." Moreover, the County ignores other portions of these guidelines stating that a "[typical retention period[]" for correspondence is at least two years.

F. *County E-mail Retention Policies, Properly Construed, are Consistent With Section 21167.6*

Properly construed, County Administrative Policies 0040-09 and 0040-11 are consistent with section 21167.6. This is because those policies define "official record" as including a document "required by law to be kept." As we have held, e-mails within the scope of section 21167.6, subdivision (e) are required by law to be kept. Therefore, such e-mails are "official records" under County policies and as such, cannot be automatically destroyed after 60 days.[25]

---

[25] For the first time in the reply brief, Plaintiffs develop an extensive argument that Government Code section 26202, when considered with Government Code sections 26205 and 26205.1, requires the County to retain records for a two-year minimum. However, Plaintiffs' three writ petitions mention Government Code section 26202 only in passing and none cite Government Code section 26205. Accordingly, we decline to consider the point. The minimum time period that the County must retain writings encompassed within section 21167.6 is not squarely presented in this case, and we offer no opinion on that issue. Plaintiffs' request for judicial notice in support of the reply brief, filed February 7, 2020, is denied.

III. *THE ALTERNATIVE GROUNDS FOR DENYING THE MOTIONS TO COMPEL DO NOT SUPPORT THE RULINGS*

In addition to determining that section 21167.6 does not require record retention, the referee also relied on several alternative grounds to support denying the motions to compel. As explained below, none support the rulings.

A. *Administrative Exhaustion*

"Exhaustion of administrative remedies is a jurisdictional prerequisite to maintenance of a CEQA action." (*Bakersfield Citizens for Local Control v. City of Bakersfield* (2004) 124 Cal.App.4th 1184, 1199.) " 'That requirement is satisfied if "the alleged grounds for noncompliance with [CEQA] were presented . . . by any person during the public comment period provided by [CEQA] or prior to the close of the public hearing on the project before the issuance of the notice of determination." ' " (*City of Long Beach v. City of Los Angeles* (2018) 19 Cal.App.5th 465, 474.) " ' "To advance the exhaustion doctrine's purpose '[t]he "exact issue" must have been presented to the administrative agency. . . .' " ' " (*Cleveland National Forest Foundation v. San Diego Assn. of Governments* (2017) 17 Cal.App.5th 413, 446.) The issue raised administratively must be " ' "sufficiently specific so that the agency has the opportunity to evaluate and respond . . . ." ' " (*Ibid*.)

Although the referee did not use the term "administrative exhaustion," in denying Plaintiffs' motions he invoked that doctrine, stating:

> "Golden Door has not established that it exercised reasonable diligence to place evidence on the record at the administrative hearing to show that the County was impermissibly deleting documents from the administrative record."

45

However, assuming without deciding that exhaustion principles apply to an alleged violation of section 21167.6, subdivision (e)—the record indisputably shows that Golden Door preserved this issue. In a letter delivered to the Board three days before the County issued the notice of determination, Golden Door's attorney stated:

> "[W]e have discovered that the County has been systematically destroying documents using its 60 day auto-delete policy. Key e-mails to and from the developer to County staff have been destroyed. This has deprived my clients of their . . . rights to an adequate administrative record."

Although this letter timely raised the document-destruction issue, the referee refused to consider it because Plaintiffs submitted it for the first time in their reply papers. Plaintiffs contend, however, the evidence was responsive to an exhaustion defense raised for the first time in the opposition. After reading excerpts of this letter aloud, Golden Door's attorney explained at the hearing:

> "We didn't know until we got those oppositions that they were raising the argument of waiver, that we had given it all up by not raising it in front of the Board of Supervisors. [¶] . . . [¶]

> "[W]e didn't know that was an issue, that we had no rights to discovery because of a failure to exhaust to the Board of Supervisors."

The referee erred in excluding this evidence. It is true, of course, that "[t]he general rule of motion practice . . . is that new evidence is not permitted with reply papers." (*Jay v. Mahaffey* (2013) 218 Cal.App.4th 1522, 1537.) However, a recognized exception is for points "strictly responsive" to arguments made for the first time in the

46

opposition. (See *Singh v. Lipworth* (2005) 132 Cal.App.4th 40, 43, fn. 2 [applying the rule to appellate briefs].)

Here, Newland raised administrative exhaustion in its opposition, stating: "Golden Door had an obligation to exhaust its administrative remedies prior to Newland Sierra Project approval by requesting that the County retain all non-official record e-mails . . . ." It was Newland's obligation to raise this issue because "[t]he exhaustion of administrative remedies doctrine 'operates as a defense . . . .' " (*Don't Cell Our Parks v. City of San Diego* (2018) 21 Cal.App.5th 338, 358.) "The respondent or real party in interest should raise the exhaustion defense . . . in the trial court. Although exhaustion is jurisdictional [citation] . . . the petitioner need not prove that it exhausted its administrative remedies if this issue is not disputed in the trial court." (*Kostka & Zischke*, *supra*, at § 23.97.)

Plaintiffs had no obligation in their moving papers to anticipate and negate Newland's exhaustion-of-remedies defense. The referee applied an incorrect legal standard (no-new-evidence in reply papers, no exceptions) to undisputed procedural litigation facts (exhaustion defense raised in opposition) and in so doing, improperly excluded the evidence. The ruling is an abuse of discretion. (*Department of Parks & Recreation v. State Personnel Bd.* (1991) 233 Cal.App.3d 813, 831 [judicial discretion requires application of the correct legal principles governing the subject].)[26]

_____

[26]    Because of this disposition, it is unnecessary to consider, and we express no opinion on Plaintiffs' contention that exhaustion principles do not apply to a dispute involving the content of the record of proceedings.

47

B. *Failure to Establish Merits as Prerequisite to Discovery*

The referee also denied the motions to compel because Plaintiffs' "bald assertion that the County has improperly destroyed documents [is] unsupported by any credible evidence . . . ." However, even assuming for the sake of discussion that Plaintiffs were required to establish the merits of their claim to propound discovery, this finding is not supported by substantial evidence.

It is undisputed that the County destroyed e-mails. At the first hearing before the referee, Newland's attorney conceded that the County destroyed "non-official record" e-mails under the 60-day automatic deletion policy:

> "So you know, were some non-official record e-mails destroyed consistent with County retention policies?
>
> "I'm sure there were. There's an automatic e-mail deletion protocol at the County . . . and I'm sure that happened. [¶] . . . [¶]
>
> "[N]ot every e-mail has been saved . . . ."

Thus, the document destruction claim was not a "bald assertion," nor was it "unsupported by any credible evidence." Moreover, Plaintiffs explained to the referee that after receiving a response from the California Department of Fish and Wildlife (CDFW) to their PRA request, Plaintiffs "cross-checked CDFW's production against the County's production relating to the same request and discovered [20] documents that were produced by CDFW, but not by the County and that should have been in the County's production." Plaintiffs' counsel stated:

> "CDFW produced meeting minutes describing how decisions were being made with respect to issues central to the CEQA analysis of the Newland Sierra project. . . . These glaring gaps in the

48

County's document production will render the CEQA record of proceedings incomplete unless [Plaintiffs are] allowed to conduct additional discovery to complete the record."

Additionally, Plaintiffs obtained e-mails from Caltrans relating to environmental review for a freeway interchange related to the Project—those e-mails are missing from the County's production, despite County personnel being copied on them. Another e-mail with attachments of meeting minutes, recovered from CDFW but apparently destroyed by the County, memorializes a 2015 meeting about the Project attended by both County and Newland representatives regarding offsite mitigation options. An e-mail that Plaintiffs describe as "fortuitously recovered" from the United States Fish and Wildlife Service, but "apparently destroyed" by the County reflects that agency's opposition to the Project: "We cannot publicly defend what is being proposed as sound conservation . . . ."

C. *Failure to Notify the County to Not Destroy E-mails*

The referee also recommended denying the motions to compel because Plaintiffs "easily included a plethora of documents in the record and did not make a timely request of the County to retain non-essential e-mails . . . ." However, that Plaintiffs included "a plethora of documents in the record" is not relevant to whether the County improperly destroyed other documents. Plaintiffs' attorney explained:

> "So [Newland's attorney] is correct that we have gotten a lot of documents. It's sort of like he's given me a tape of a movie and he said the movie is a little long, it's three hours, I trimmed it down to two hours. I just cut out the scenes that you didn't want to look at.
>
> "Okay, it's a long movie, but that's the way these projects work.
>
> "I would like to see all of the deleted scenes. Those might be the ones that I am really interested in."

49

Also troubling is that the ruling assumes without analysis that it is incumbent upon project opponents to notify a public agency to comply with its obligations under section 21167.6. The County makes the same argument here, asserting that Plaintiffs need only have asked "at the outset of the Project's four-year-long public permitting and environment review process," and "[e]very non-official e-mail would then have been available."

However, neither the County nor the referee's recommended rulings cite any authority for the remarkable proposition that an agency may destroy documents section 21167.6 mandates for judicial review, so long as a project opponent does not give advance notice that he or she expects the agency to comply with the law. Any such requirement would be anathema to CEQA, which is centered around government accountability. " 'If CEQA is scrupulously followed, the public will know the basis on which its responsible officials either approve or reject environmentally significant action, and the public, being duly informed, can respond accordingly to action with which it disagrees.' " (*Sierra Club v. County of Fresno* (2018) 6 Cal.5th 502, 512.) The integrity of the CEQA process depends on judicial review of agency determinations, and judicial review itself is dependent on a record of proceedings compliant with section 21167.6. (See *Protect Our Water v. County of Merced* (2005) 130 Cal.App.4th 488, 497 ["We intended by our Opinion to educate all those governmental agencies charged with the responsibility to implement CEQA, including the County, about the pivotal importance of a complete administrative record . . . ."].)

50

D. *No Discovery in a CEQA Case*

Defending the rulings, the County contends that "discovery is generally not permitted" in a CEQA action. The County is incorrect. The Civil Discovery Act applies to both civil actions and special proceedings of a civil nature. (*City of Los Angeles v. Superior Court* (2017) 9 Cal.App.5th 272, 284; Code Civ. Proc., § 2016.020, subd. (a).) A petition for a writ of mandate is a special proceeding. (*Nerhan v. Stinson Beach County Sater Dist.* (1994) 27 Cal.App.4th 536, 540.) Consistent with these statutes, in *CID*, the court rejected an argument that discovery is not allowed in CEQA cases, stating:

> "City's contention that discovery is not allowed in a CEQA case is wrong. One need only look at the provisions of CEQA to see that the Legislature considered the possibility that discovery might be conducted in a CEQA proceeding and, thus, did not prohibit the use of discovery. The CEQA provision that establishes the briefing schedule authorizes the trial court to extend the schedule for 'good cause,' which explicitly includes 'the conduct of discovery.' (§ 21167.4, subd. (c).) This statutory reference to discovery establishes, without ambiguity, that discovery is possible in a CEQA proceeding. Furthermore, published case law confirms that courts have allowed discovery in CEQA proceedings." (*CID*, *supra*, 205 Cal.App.4th at p. 713.)

Sidestepping these authorities, the County contends that allowing discovery would conflict with legislative goals to decide CEQA actions expeditiously. However, the County's apparent failure to comply with section 21167.6 is the root cause of the delay in this case—not Plaintiffs' efforts to cure or at least mitigate the resulting harm by seeking discovery. Moreover, as amicus curiae aptly notes, because section 21167.6 is mandatory and broadly inclusive, discovery to obtain components of the record should ordinarily be

51

unnecessary. Most cases should not require discovery to establish the record of proceedings, nor the inherent delay it entails.

E. *It Costs Too Much*

The County asserts that it costs $76,000 per month for e-mail storage, and "[r]etaining every e-mail and preliminary draft . . . would overburden and delay the County in responding to PRA requests." We are sensitive to government costs and the burdens those costs place on taxpayers. However, CEQA does not require that a lead agency retain "every e-mail and preliminary draft." Rather, under section 21167.6, subdivision (e)(7), the County must retain "[a]ll written evidence or correspondence submitted to, or transferred from" the County "with respect to" CEQA compliance or "with respect to the project." Under section 21167.6, subdivision (e)(10), the County must also retain, among other things, "all internal agency communications, including staff notes and memoranda *related to the project*" or CEQA compliance. (Italics added.)

In related arguments, the California State Association of Counties and amici curiae on behalf of the County assert it would be "absurd to claim that a lead agency violated the law . . . if it did not save and include in the administrative record every handwritten note, every sticky note attached to a document, or every fax sent to colleagues to organize a meeting." Amici curiae add, "[E]veryone in an office environment knows that much of the conversation that would happen in hallways or over the telephone in the past are now accomplished via e-mail."

We agree that e-mail has supplanted many traditional forms of communication. However, nothing in section 21167.6 or this opinion requires retention of e-mails having

52

no relevance to the Project or the agency's CEQA compliance with respect to the Project. The e-mail equivalent to sticky notes, calendaring faxes, and social hallway conversations—that is, e-mails that do not provide insight into the project or the agency's CEQA compliance with respect to the project—are not within the scope of section 21167.6, subdivision (e) and need not be retained to comply with section 21167.6.

Nor does section 21167.6 (or this opinion) require Project-related e-mails to be retained in perpetuity. CEQA contains short limitations periods. For example, an action alleging that an EIR does not comply with CEQA must be filed within 30 days after the agency files a notice of determination. (§ 21167, subd. (c).) If no notice of determination is filed, the action must be filed within 180 days after the agency approves the project. (See generally *Kostka & Zischke*, *supra*, at § 23.18.) The lapse of applicable limitations periods with no action having been commenced is a relevant consideration in determining e-mail retention periods consistent with section 21167.6. And in CEQA litigation cases, a final judgment will ultimately occur.

IV. *RULINGS REGARDING NEWLAND AND THE CONSULTANTS*

A. *Newland's Copies of County-destroyed Documents*

Attempting to reconstruct e-mails the County had destroyed, Plaintiffs propounded a request to Newland to produce all of its communications with the County regarding the Project. The referee recommended denying the motion to compel this discovery because "it is also too late to enlarge the administrative record in this manner. . . ." This ruling is erroneous. As explained in Part III, *ante*, Plaintiffs are not seeking to enlarge the record

53

of proceedings.  Rather, they are attempting to compile the record as provided in section 21167.6.

B.  *Consultants' Copies of County-destroyed Documents*

1.  *First set of motions to compel (LL&G and Dudek)*

In another attempt to reconstruct the record, Golden Door issued business record subpoenas to LL&G and Dudek.  Golden Door asserts that because the County has " 'constructive possession' " of such documents under the "express terms of its MOU's with Newland and [the] consultants, the documents should have been ordered produced from those parties, or from the County after obtaining them from those parties . . . ."

The referee recommended that the motions to compel the consultants to produce documents should be denied on several grounds, including:  (1) the documents sought are "outside the administrative record, which cannot be expanded to include extra-record evidence for the purpose of judicial review absent limited exceptions, which do not apply in this case"; (2) Golden Door "did not make even a preliminary showing . . . that the County improperly destroyed documents that were required to be included in the CEQA administrative record"; (3) the County has a "document retention policy [that] was adopted as a [C]ounty ordinance under applicable Government Code sections"; and (4) "Golden Door's contention that the County illegally deleted documents, an unsubstantiated assumption on which Golden Door base[d] this motion and the other five motions at issue, is unsupported by any declarations . . . [and] Golden Door has not shown that in the exercise of reasonable diligence, it could not have timely presented this

evidence on the administrative record. Under these circumstances, any information about

destruction of records *is not cognizable* for purposes of judicial review." (Italics added.)

For reasons explained in Part III, *ante*, these rulings are erroneous.[27]

      2. *Second set of motions to compel (AECOM, Development Planning and Financing Group, Fehr & Peers, Fuscoe Engineering, Inc., GSI Water Solutions, Inc., John Burns Real Estate Consulting, Leighton & Associates, T.Y. Lin International)*

In the second set of motions, Plaintiffs sought an order compelling other

environmental consultants to provide further responses to Golden Door's deposition

subpoenas for business records. The moving papers again explained that Plaintiffs

sought record documents, not extra-record evidence:

> "The County's document deletion policy has necessarily excluded
> documents that are statutorily part of the record of proceedings for
> the Project. Discovery of documents under the [c]onsultants'
> possession, custody, or control may be the only means to recover
> information that the County concedes has been permanently deleted
> and is irrecoverable. [¶] . . . [¶]
>
> "[Plaintiffs] do[] not seek to introduce evidence outside the
> record of proceedings . . . . Rather, [Plaintiffs] seek[] evidence that
> should properly be part of the record under . . . section 21167.6,
> subdivision (e), but that was destroyed by the County. The
> [s]ubpoenas are therefore necessary to enable [Plaintiffs] to prepare
> a statutorily complete record for proper CEQA adjudication."

---

[27]     Because of this disposition, it is unnecessary to address Plaintiffs' contentions that the motions to compel should also have been granted under the PRA because the County was in constructive possession of the consultants' documents. As Plaintiffs note, their requests for production under the Civil Discovery Act and their PRA requests sought the same documents. Our holding that discovery should have been permitted under the Civil Discovery Act is, therefore, dispositive of the PRA claims.

55

The referee denied this motion on the same grounds he denied the previous motion seeking to enforce business records subpoenas. Additionally, the referee found that AECOM and T.Y. Lin International were not Project consultants.

Plaintiffs' memorandum of points and authorities in this court does not challenge the referee's factual determination that AECOM and T.Y. Lin International are not Project consultants. Accordingly, this issue is forfeited. In all other respects, the referee's determinations with respect to these consultants are erroneous for the reasons explained in Part III, ante.

## V. *THE COMMON INTEREST DOCTRINE ISSUES*

### A. *Introduction*

The County and Newland asserted privilege claims in response to motions to compel. The referee's rulings on these points span both the first in August 2019 and the second in October. To place the relevant facts in context, we first summarize applicable legal principles.

### B. *The Common Interest Doctrine*

Section 21167.6 does not abrogate the attorney-client privilege or work product protection. (*Citizens for Ceres v. Superior Court* (2013) 217 Cal.App.4th 889, 913 (*Ceres*).) Ordinarily, however, a privilege is waived upon voluntary disclosure of the privileged information to a third party. (*Oxy Resources California LLC v. Superior Court* (2004) 115 Cal.App.4th 874, 888 (*Oxy Resources*).) If Newland and the County shared attorney-client privileged documents between themselves, a waiver issue arises.

56

Persons who possess common legal interests may share attorney-client privileged information without waiving the privilege. This principle "has been variously referred to as the 'joint defense' doctrine, the 'common interest' doctrine, and the 'pooled information' doctrine." (*Oxy Resources*, *supra*, 115 Cal.App.4th at p. 888.) We adopt the convention the parties have in this case, and use common interest doctrine. " ' "[F]or the common interest doctrine to attach, most courts seem to insist that the two parties have in common an interest in securing legal advice related to the same matter—and that the communications be made to advance their shared interest in securing legal advice on that common matter." ' " (*Behunin v. Superior Court* (2017) 9 Cal.App.5th 833, 853.)

When the common interest doctrine is asserted to prevent disclosure of shared information between a project applicant and lead agency, there is an apparent split of authority whether the doctrine applies to preapproval communications—those shared before EIR approval. In *Ceres*, *supra*, 217 Cal.App.4th 889, the court held that the common interest doctrine does not protect preapproval shared communications. This is because before project approval, "the law presumes the lead agency is neutral and objective and that its interest is in compliance with CEQA. . . . The agency's unbiased evaluation of the environmental impacts of the applicant's proposal is the bedrock on which the rest of the CEQA process is based." (*Id.* at p. 917.) However, "the applicant's primary interest in the environmental review process is in having the agency produce a favorable EIR that will pass legal muster. These interests are fundamentally at odds." (*Id.* at p. 918.) "Only after approving the proposal can the agency be said to join forces

57

with the applicant." (*Id*. at p. 919.) Thus, "preapproval disclosure of communications by one to the other waives any privileges the communications may have had." (*Ibid*.)

However, the court in *California Oak Found. v. County of Tehama* (2009) 174 Cal.App.4th 1217 (*California Oak*) analyzed the interests differently. There, a lead agency received four documents pertaining to CEQA compliance from its attorney. The agency shared these documents with the applicant. (*Id*. at p. 1221.) The agency claimed the documents remained privileged under the common interest doctrine. The appellate court agreed, stating that the attorney's communication was intended to produce an EIR that would be CEQA-compliant. In this respect, the agency's and applicant's interests were aligned. (*Id*. at pp. 1222-1223.)

Unfortunately, the opinion in *California Oak* is only partially published, and the nonpublished parts include the factual background. (*California Oak*, *supra*, 174 Cal.App.4th 1217, 1220.) Thus, as *Ceres* noted, it is unclear if *California Oak* was dealing with pre or postapproval shared communications, or both. (*Ceres*, *supra*, 217 Cal.App.4th at pp. 920-921.) To the extent *California Oak* applies the common interest doctrine preapproval, *Ceres* disagreed. (*Ceres*. at p. 921.)

C. *Additional Background*

1. *Joint defense agreements*

In December 2016, the County, Vallecitos Water District, Newland, and their respective attorneys entered into a "Confidential Joint Defense Agreement" in connection with defending the Vallecitos case.

58

In July 2018, the County, Newland, and their respective attorneys entered into a separate "Confidential Joint Defense Agreement," in defending the Records Action. In September 2018, after the Board approved the Project, these same parties entered into a separate "Confidential Joint Defense Agreement" for defense of anticipated litigation ultimately asserted in the CBD and CEQA Actions.

2. *Privilege claims and the first privilege log motion*

Plaintiffs propounded discovery seeking communications between Newland and the County regarding the Project. Newland and the County objected on several grounds, including privilege and the common interest doctrine. In May 2019, Plaintiffs filed a motion to compel the County to produce a privilege log. Subsequently, the County produced a privilege/exemption log identifying 3,864 withheld documents.

At the hearing with the referee, the County asserted that the common interest doctrine applied because of the joint defense agreements in the Vallecitos and Records actions. Newland's attorney asserted these facts distinguished *Ceres*:

> "[W]e're not contesting *Ceres*, we're not saying it's good law, bad law, we don't want an appellate court opinion on it— [¶] . . . [¶]

> "Our position is [*Ceres*] doesn't apply. That's an interesting case for preapproval confidences because the court said that maybe the parties, the agency and the applicant, are not aligned preapproval.

> "But all of that is just academic because these [joint defense] agreements specific to this litigation are all post[-]filing of the litigation. *Ceres* doesn't apply, the case doesn't apply."

The referee determined (1) the motion to compel a privilege log was moot because the County had now produced a log; (2) if Plaintiffs were dissatisfied with the log, they

could bring another motion; and (3) a ruling on privilege (and the common interest doctrine) would await such future motion.

### 3. *The first (August 2019) rulings*

Despite stating he would defer ruling on common interest, in the August 2019 recommendations the referee concluded that Newland and the County had aligned interests stemming from their joint defense of the Vallecitos case and the Records Action. The referee determined that *California Oak*, applied, not *Ceres*. Therefore, the County and Newland were not required to produce "communications and documents related to common defense strategies to each suit or anticipated suit."

### 4. *The motion to compel an amended privilege log*

Thereafter, the County provided an amended privilege log identifying 1,952 documents as privileged or exempt, and produced the documents for which it was no longer claiming privilege. Plaintiffs filed a motion to compel an amended privilege log, asserting that the County failed to sufficiently identify each document to enable them (and the court) to evaluate whether privilege claims had merit. Plaintiffs also asserted that the County had not demonstrated how the claimed deliberative process privilege and/or exemption for preliminary draft documents applies to some 1,700 documents. The County's opposition asserted that since the court had already ruled that Plaintiffs were not

entitled to discovery, Plaintiffs were also not entitled to a privilege log—and thus had no grounds to complain about the log the County voluntarily provided.[28]

5. *The referee's ruling*

The referee denied Plaintiffs' motion to compel an amended privilege log, concluding it was "predicated on the same flawed legal arguments already rejected" by both the superior court (when it adopted the referee's first set of rulings) and this court, by summarily denying Plaintiffs' first writ petition. The referee noted that Golden Door continued "to ignore this rule of the case." The referee further determined that "Golden Door did not comply with its required obligation to meet and confer in good faith with the County. Golden Door did not act as a reasonable party genuinely seeking informal resolution of this discovery dispute." The referee also considered, and rejected, Plaintiffs' challenges to the PRA exemption claims the County asserted.

D. *Contentions*

As to the August 2019 rulings, and relying on *Ceres*, Plaintiffs assert that the common interest doctrine does not apply to documents shared between Newland and the County prior to October 10, 2018, the date the Board adopted the last Project approval. Plaintiffs further contend that because Newland and the County refused to produce the

---

[28]     The County and Newland also asserted that no exemption log was required under the PRA. Because (1) Plaintiffs are entitled to discovery to obtain mandated parts of the record under Public Resources Code, section 21167.6, subdivision (e), and (2) Plaintiffs concede that the PRA requests are coextensive with their discovery requests , it is unnecessary to address whether the County has "constructive possession" of consultants' records.

joint defense agreements, there is insufficient evidence to sustain the finding of common interest.

As to the second ruling in October 2019, Plaintiffs contend that almost none of the documents listed on the "belatedly-produced privilege log" assert attorney-client or work product privilege. Plaintiffs conclude, therefore, that because Newland and the County "made no affirmative showing whatsoever to establish the underlying privileges, the common interest doctrine could not possibly shield the documents from production."

E. *The August 2019 Ruling: The Referee Correctly Determined the Common Interest Doctrine Applies Preapproval*

Contrary to Plaintiffs' contention, substantial evidence supports the referee's finding that Newland and the County entered into joint defense of the Vallecitos case and Records Action. Newland's attorney filed a declaration establishing these facts; it was unnecessary to include the joint defense agreements themselves to corroborate counsel's representations.

On this record, the referee correctly determined that the common interest doctrine applied to the preapproval shared communications. The Vallecitos case and Records Action each sought to kill, or at least mortally wound the Project, preapproval. For example, in the Vallecitos case, Golden Door sought an injunction mandating that the County "cease its action in processing the proposed Newland Project, including its EIR and application for a subdivision map" until a lawful revised water supply assessment demonstrated "sufficient water supply for the Project." The Records Action also sought to end the Project. Golden Door sought an injunction prohibiting the County from

62

"[p]rocessing . . . the Newland Sierra project EIR until the County has demonstrated compliance with . . . all applicable laws."

*Ceres* holds that the common interest doctrine does not apply preapproval because the interests of a lead agency and project applicant diverge while the application is pending. (*Ceres*, *supra*, 217 Cal.App.4th 889.) This is because preapproval, "the law presumes the lead agency is neutral and objective" whereas the applicant's interest is that the agency produce a favorable EIR that will pass legal muster. (*Id*. at pp. 917-918.)

It is unnecessary here to weigh in on the apparent split of authority between *Ceres* and *California Oak* because *Ceres* is distinguishable. Unlike *Ceres*, before Project approval, Golden Door had already sued the lead agency and applicant, twice no less, seeking orders effectively killing the Project. Golden Door's litigation strategy, and not anything the County and Newland initiated—created their common interest in defending these cases. That defense would necessarily entail defending the Project. A project opponent cannot by its own litigation strategy create a preapproval common defense interest, and then claim the agency and applicant have acted improperly in furthering that interest by sharing relevant attorney-client communications.

F. *Plaintiffs' Challenge to the October 2019 Ruling Denying the Motion for an Amended Privilege Log is Forfeited*

The referee denied Plaintiffs' motion seeking an amended privilege log on the grounds (among others) that Golden Door failed to comply with meet and confer requirements. In its petition, Plaintiffs' memorandum of points and authorities contains no argument challenging this ruling. This aspect of the ruling is challenged only in the

63

petition's factual allegations, which assert that Golden Door "extensively negotiated" during meet-and-confer sessions.

In the return, "[r]eal [p]arties deny. . . that prior to the filing of the motions to compel Golden Door 'met and conferred extensively with the County.'  Real Parties further allege that, as to the County's privilege and exemption log, Golden Door never identified or challenged the description or exemption claimed for any specific entry on the log as part of any meet and confer process."

The appellate resolution of this issue is governed by well-settled rules.  First, as a reviewing court, we are bound by the trial court's resolution of disputed facts.  (See *Reynaud v. Technicolor Creative Services USA, Inc.* (2020) 46 Cal.App.5th 1007, 1015.) Second, issues not addressed as error in a party's opening brief with legal analysis and citation to authority are forfeited.  (*Jones v. Superior Court* (1994) 26 Cal.App.4th 92, 99; *Save Agoura Cornell Knoll v. City of Agoura Hills* (2020) 46 Cal.App.5th 665, 704, fn. 14.)

Accordingly, (1) we are bound by the referee's factual determination that Plaintiffs did not meet-and-confer, and (2) Plaintiffs' failure to address this issue under a separate heading, with analysis and citation to authority, operates to forfeit the point.  In sum, we hold that the referee properly denied the motion to compel an amended privilege log.

*VI.  THE OCTOBER 2019 RULINGS DENYING MOTIONS TO COMPEL DISCOVERY
ARE BASED ON ERRONEOUS LAW-OF-THE-CASE GROUNDS*

A.  *Additional Factual and Procedural Background*

In October 2019, this court summarily denied Plaintiffs' petition for a writ of
mandate, stating, "The petition [is] denied."  Before individually addressing the three
motions to compel filed in September 2019, the referee denied them all on law-of-the-
case grounds, stating, "These motions are all predicated on the same flawed legal
arguments already rejected by the [s]uperior [c]ourt and the Court of Appeal."  "Simply
based on the rule of the case principle, this motion must be denied."  As explained next,
this analysis is incorrect.[29]

B.  *Summary Denial of a Writ of Mandate Petition is Not Law of the Case*

"The law of the case doctrine states that when, in deciding an appeal, an appellate
court 'states in its opinion a principle or rule of law necessary to the decision, that
principle or rule becomes the law of the case and must be adhered to throughout its
subsequent progress, both in the lower court and upon subsequent appeal . . . .' "  (*Kowis
v. Howard* (1992) 3 Cal.4th 888, 892-893 (*Kowis*).)

---

[29]    In their writ petition here, Plaintiffs assert that the " 'rule of the case' " grounds are
erroneous,—but do not cite authority or develop the argument.  However, unlike the
meet-and-confer ruling, which was based on resolution of disputed facts, applying the
law-of-the-case doctrine in this case is a question of law involving indisputable litigation
facts.  Therefore, we decline to find it forfeited.  (See *Alki Partners, LP v. DB Fund
Services, LLC* (2016) 4 Cal.App.5th 574, 599.)

"When an appellate court considers a petition for writ of mandate . . . the court may: (1) deny the petition summarily, before or after receiving opposition; (2) issue an alternative writ or order to show cause; or (3) [under limited circumstances,] grant a peremptory writ in the first instance . . . ." (*Lewis v. Superior Court* (1999) 19 Cal.4th 1232, 1239.)[30] An appellate court may summarily deny a petition for a writ of mandate on grounds that have nothing to do with the merits. (See *Omaha Indemnity Co. v. Superior Court* (1989) 209 Cal.App.3d 1266, 1272-1274.) Therefore, a summary denial of a petition for a writ of mandate is not a merits adjudication and "does not establish law of the case . . . ." (*Kowis*, *supra*, 3 Cal.4th at p. 899.)

C. *Plaintiffs' Second Motion to Compel the County and Newland to Produce Documents, and the County's Motion to Quash*

In denying Plaintiffs' motion to compel the County and Newland to provide further responses to the second set of discovery requests, and also in granting the County's motion to quash, the referee stated, "[T]he arguments Golden Door recycles in these motions have already been analyzed at some length and squarely rejected by this court and the Court of Appeal. Surprisingly, Golden Door ignores the binding nature of these determinations, which constitute rule of the case."

This analysis is incorrect for two reasons. First, the law-of-the-case doctrine does not apply to trial court rulings. (*Lawrence v. Ballou* (1869) 37 Cal. 518, 521 ["The

---

30      In 2010, the California Supreme Court approved a fourth possibility: a "suggestive *Palma* notice," encouraging (but not obligating) the trial court to reverse itself without further appellate court intervention. (See *Brown, Winfield & Canzoneri, Inc. v. Superior Court* (2010) 47 Cal.4th 1233, 1238-1239.)

doctrine that a previous ruling has become the law of the case has no application except as to the decisions of appellate [c]ourts"].) To the contrary, a trial court may reconsider its prior interim orders to correct its own errors. (*Le Francois v. Goel* (2005) 35 Cal.4th 1094, 1107.) Second, as just explained, summary denial of a petition for writ of mandate is not law of the case. (*Kowis*, *supra*, 3 Cal.4th at p. 899.) Thus, neither the referee's prior rulings, the trial court's adoption of them, nor this court's summary denial of Plaintiffs' first writ petition is law of the case.

As additional grounds for denying these motions, the referee quoted from his previous rulings "at length to emphasize that the arguments Golden Door recycles in these motions have already been analyzed at some length and squarely rejected by this court . . . ." These include (1) the referee's application of *Western States*, *supra*, 9 Cal.4th 559; (2) section 21167.6 "does not mandate document retention"; and (3) the administrative record is already more than 170,000 pages. As explained *ante*, we disagree with these rulings and, therefore, the referee should not have denied these motions to compel production of documents.

## VII. *THE PRA EXEMPTION RULINGS*

### A. *The County's Claims of PRA Exemption*

Under the PRA, an agency is generally exempt from disclosing public records that are: "Preliminary drafts, notes, or interagency or intra-agency memoranda that are not retained by the public agency in the ordinary course of business, if the public interest in withholding those records clearly outweighs the public interest in disclosure." (Gov. Code, § 6254, subd. (a).) Additionally, under the PRA there is a separate deliberative

67

process exemption for " 'not only the mental processes by which a given decision was reached, but the substance of conversations, discussions, debates, deliberations and like materials reflecting advice, opinions, and recommendations by which government policy is processed and formulated.' "  (*Caldecott v. Superior Court* (2015) 243 Cal.App.4th 212, 225.)  "The entity attempting to deny access has the burden of proof" to demonstrate that the claimed exemption applies.  (*Los Angeles Unified School Dist. v. Superior Court* (2007) 151 Cal.App.4th 759, 767.)

Here, to withhold approximately 1,900 documents from discovery, the County relied on both the preliminary draft exemption and the deliberative process privilege.

Without analyzing *any* of the 1,900 claimed exempt documents individually, nor referring even to generic categories of documents, the referee upheld all 1,900 claims of privilege or exemption.  Extensively citing a declaration filed by M.S., the County's deputy director of project planning, the referee concluded, "[T]he public interest, which is furthered by not disclosing these documents, clearly outweighs the public interest served by disclosure because disclosure would create a chilling effect on the free exchange of ideas, would force the County to change its policies on EIR preparation, would reduce the quality and increase the costs of preparing EIRs, would cause confusion and misinformation by providing drafts that do not reflect the County's final policy or position, and would force the County to publicize uncertified information despite the County's responsibility to ensure the adequacy and objectivity of environmental documentation under CEQA."

Plaintiffs contend the referee's ruling is incorrect for several reasons. However, it is only necessary to address one, which is dispositive—the County's insufficient showing to support its claim that 1,900 documents are privileged or exempt.[31]

The standard of review is mixed. We accept the trial court's factual determinations if supported by substantial evidence, " 'but we undertake the weighing process anew.' " (*American Civil Liberties Union of Northern California v. Superior Court* (2011) 202 Cal.App.4th 55, 66 (*ACLU*).)

The record is insufficient to have enabled the referee to find that 1,900 documents are exempt, and is equally insufficient to enable this court to "undertake the weighing process anew." The privilege log identifies the 1,900 documents by (1) "Date"; (2) "Document Type," such as "e-mail string" or "Word document"; (3) "Document Author (if known)"; and (4) "Document Description," such as "Preliminary draft, drainage study," or "E-mail string re preliminary draft technical report/study re hydrology/water quality."

To carry its burden, the County must describe the justification for nondisclosure with reasonably specific detail and demonstrate that the information withheld is within the claimed privilege or exemption. This process cannot require an agency to disclose

---

[31]   Plaintiffs also contend (1) under *Citizens for a Better Environment v. Department of Food & Agriculture* (1985) 171 Cal.App.3d 704, the preliminary draft exemption does not apply to documents actually retained, even if they are preliminary drafts; (2) the deliberative process privilege does not apply to communications between [County] staff and consultants; and (3) the County waived exemptions by disclosing claimed exempt documents with third parties.

the very information it seeks to protect.  Having both the burden of proof and all the evidence, the agency has the difficult task of justifying its withholding the documents without compromising that very act by revealing too much information.  (*ACLU*, *supra*, 202 Cal.App.4th at p. 82.)  However, declarations supporting the agency's claims of exemption " 'must be specific enough to give the requester "a meaningful opportunity to contest" the withholding of the documents and the court to determine whether the exemption applies.' "  (*Id*. at p. 83.)  " '[T]he agency must describe "each document or portion thereof withheld, and for each withholding it must discuss the consequences of disclosing the sought-after information." ' "  [Citations.]  "Conclusory or boilerplate assertions that merely recite the statutory standards are not sufficient."  (*Ibid*.)  "A statement is 'conclusory' . . . where no factual support is provided for an essential element of the claimed basis for withholding information."  (*Id*. at p. 83, fn. 13.)

Citizens for Open Government v. City of Lodi (2012) 205 Cal.App.4th 296 (*Lodi*) is instructive.  There, the agency withheld 28 e-mails between the city's staff and their consultants under the deliberative process privilege.  (*Id*. at p. 305.)  In the trial court, the agency asserted the privilege applied because staff and the consultants "engaged in various deliberative discussions and document exchanges concerning the [p]roject and the [revised] EIR.  In order to foster candid dialogue and a testing and challenging of the approaches to be taken, those discussions are appropriately exempt . . . ."  (*Id*. at p. 306.)  Rejecting the privilege claim, the appellate court stated, "The city's explanation . . . of why the privilege applies, i.e., to 'foster candid dialogue and a testing and challenging of the approaches to be taken,' was simply a policy statement about why the privilege in

70

general is necessary. . . . While the policy behind the privilege makes sense, invoking the policy is not sufficient to explain the public's specific interest in nondisclosure of the documents in this case. That policy could apply to almost any decisionmaking process. The city therefore failed to carry its burden to explain what the public's specific interest in nondisclosure was *in this case*." (*Id*. at p. 307.)

Similarly here, M.S.'s declaration is insufficient to support the referee's determinations, and likewise this court's obligation to weigh anew whether the public interest in withholding the records clearly outweighs the public interest in disclosure. Whereas the privilege log takes a document-specific approach, the M.S. declaration avoids discussing any individual document and instead discusses the 1,900 documents as one enormously large unified group. Much like the agency's claims in *Lodi*, *supra*, 205 Cal.App.4th 296, M.S.'s declaration makes broad conclusory claims, but these merely echo public policies underlying claims of privilege generally:

> "County staff must be able to have candid conversations and a free-exchange of ideas with consultants retained to prepare project environmental documents . . . . [¶] . . . [¶]

> "The candid exchange of ideas through this process ensures the preparation of a more robust, informational, and objective EIR for public review. [¶] . . . [¶]

> "[If] required to publicize deliberations between County staff and outside qualified environmental consultants, the County would be forced to re-examine its current policies concerning deliberation and preparation of environmental documents for projects under CEQA. [¶] . . . [¶]

> "If these back and forth exchanges between County staff, consultants, and the applicant about the Project draft and final EIRs were published, it would likely have a chilling effect on such

71

conversations, which would impair the County's ability to flesh out the important policies, approaches, and issues needed to produce quality EIRs.  [¶] . . . [¶]

"There is also a strong public policy interest in avoiding the confusion likely to result if different initial draft versions of the same EIR document, such as the Project EIR, are released."

Under *Lodi*, this is insufficient, and the referee's repeating them nearly verbatim in the ruling does not make them sufficient.  M.S.'s explanation that the 1,900 documents should be exempt to enable "candid conversations and a free-exchange of ideas" that "ensure[] the preparation of a more robust, informational, and objective EIR for public review" is "simply a policy statement about why the privilege in general is necessary." (*Lodi*, *supra*, 205 Cal.App.4th at p. 307.)  There is no specific explanation of the role played by any of the 1,900 documents in the deliberative process, or why disclosure would be harmful—other than these generalities.  M.S.'s declaration states that disclosure of all 1,900 documents would have a "chilling effect" on "back and forth exchanges" between staff and consultants, but does not explain why or how that would occur as to any of the 1,900 documents.[32]  The County should be afforded an opportunity to file supplemental declaration(s) in the superior court containing information from which the court may make an informed decision on privilege and exemption claims.  (See *Osborn v. I.R.S.* (6th Cir. 1985) 754 F.2d 195, 198 [allowing government on remand to submit additional information to support exemption claims].)

---

[32]    Defending the referee's ruling, the County contends that, "Among other things, the [M.S.] declaration . . . is not controverted . . . ."  That is true, however, by withholding the documents the County alone has all the evidence.

72

## VIII. *IN LIGHT OF PLAINTIFFS' RIGHT TO DISCOVERY, THE ORDER DENYING THE MOTION TO AUGMENT MUST BE VACATED*

### A. *Factual Background*

In late 2019, Plaintiffs filed in the superior court a motion to augment the record of proceedings with (1) key documents the County has (allegedly) omitted from the record; (2) documents from the Merriam Mountains project; (3) documents from the record prepared for the Records Action; (4) documents linked or attached to other documents the County admits should be in the record of proceedings; and (5) documents withheld on privilege claims.

Based on the referee's rulings, which the superior court had adopted, the court denied the motion to augment with respect "to key documents." The court also upheld the County's claim of PRA exemptions and common interest doctrine privilege based on the referee's prior orders.

Plaintiffs contend this order erroneously validates the County's destruction of Project-related e-mails "even where copies had been obtained or could be obtained from other sources." Plaintiffs further contend that the order erroneously excludes records the County improperly claimed to be exempt or privileged—"despite the fact that those documents were retained by the County and shared with third parties, such as Newland and the consultants." Plaintiffs add that section 21167.6 does not allow these documents to be withheld as "drafts." Plaintiffs especially complain that the court denied augmenting the record to include documents encompassed within section 21167.6 that Golden Door "fortuitously obtained from other sources, such as other public agencies."

73

The order denying the motion to augment must be vacated. The foundation for the court's ruling is that "section 21167.6, [subdivision] (e) is not a retention statute" and "the County's long-standing records retention policy is lawful." As explained in Part III, *ante*, these statements are incorrect. After discovery is completed, Plaintiffs should be afforded a reasonable period of time to bring a new motion to augment.

## IX. *REMEDY*

Asserting that "hundreds, if not thousands, of the County's admittedly destroyed e-mails can never be recovered . . . and their content cannot be proven or known," Plaintiffs contend "judgment should be entered for [Plaintiffs]" and "the Project approvals should be set aside." Alternatively, Plaintiffs contend that at "minimum," the record should be ordered augmented with the few record documents that Plaintiffs have obtained, as well as those available from other sources or wrongfully withheld under inapplicable privilege and exemption claims.

In *Protect Our Water v. County of Merced* (2003) 110 Cal.App.4th 362, upon which Plaintiffs rely, the appellate court reversed because the large administrative record was so disorganized as to be inadequate for review. Many documents could not be identified, and key findings by the administrative agency were "impossible to find—let alone sufficient to enable [the court] to determine whether they [were] supported by substantial evidence." (*Id.* at pp. 364-365, 372.)

Contrary to Plaintiffs' contention, *Protect Our Water* is inapplicable here. The key distinguishing fact is that there, the court was presented with a record of proceedings, albeit a grossly deficient one. In contrast here, a record of proceedings in compliance

74

with section 21167.6 is still a work in progress, and will remain so until Plaintiffs complete discovery and the court hears and decides a motion to augment the record of proceedings. In short, Plaintiffs' request for judgment based on an inadequately prepared record is denied without prejudice as premature; we express no opinion on its merits.

These three writ petitions collectively involve 11 motions to compel discovery of some 46 separate requests for production of documents and/or subpoenas for business records. Rather than ruling on each individual request for production, the referee and superior court issued broad rulings on legal principles involved, and on that basis denied the motions. This approach necessarily requires the same treatment in the appellate court.

In light of our holdings, one or more of the motions to compel should be granted in whole or in part—but it is also conceivable that some should be denied as to specific requests for production. Rulings with that degree of precision have not yet occurred in this case in the trial court and, therefore, we cannot do so in the context of these writ petitions.

Accordingly, we will direct that the parties shall meet and confer in an attempt to resolve the disputes that are the subject of these consolidated writ petitions in light of our holdings. To the extent issues remain unresolved, the superior court shall afford Plaintiffs a reasonable opportunity to bring motions to compel, addressing the issues anew in light of this opinion. Additionally, should Plaintiffs so elect, the superior court should afford Plaintiffs an opportunity to seek to be relieved of their stipulation to submit "all future and additional discovery disputes" to the referee. (See *People v. Trujillo*

75

(1977) 67 Cal.App.3d 547, 554-555 [trial court discretion to relieve a party of a stipulation in "other special circumstance[s] rendering it unjust to enforce the stipulation"].)

## DISPOSITION

Let a writ of mandate issue directing the superior court to vacate:

(a) the September 10, 2019 order approving amended discovery referee recommendations 1 through 6, except with respect to the determination that the common interest doctrine applies to preapproval communications between the County and Newland Sierra, which shall not be vacated; and

(b) the November 18, 2019 order approving discovery referee recommendations on five discovery motions (7 through 11), except with respect to: (i) paragraph 2 of that order reducing sanctions to $0.00; (ii) findings that AECOM and T.Y. Lin International were not Project consultants; and (iii) the denial of Plaintiffs' motion for an amended privilege log, which shall not be vacated; and

(c) the November 18, 2019 order on the motions to augment "the administrative record" to the extent that order denied relief requested.

The writ shall also direct the superior court to:

(1) conduct further proceedings in conformity with this opinion on the motions underlying the above-referenced orders, after the parties have met and conferred and been given the opportunity to file additional briefing; and

(2) afford plaintiffs and petitioners a reasonable opportunity to seek to be relieved of their stipulation to submit all future discovery disputes to the referee.

Plaintiffs and petitioners shall recover costs.


McCONNELL, P. J.

WE CONCUR:


HALLER, J.


O'ROURKE, J.